385 So.2d 355 (1980)
Orelia HANZY
v.
Clarence SAM, Affiliated Foods, Inc. and United States Fidelity and Guaranty Company.
No. 13208.
Court of Appeal of Louisiana, First Circuit.
March 31, 1980.
*356 Thomas L. Mahfouz, Morgan City, for plaintiff and appellant.
Robert D. Morvant, Thibodaux, for defendants and appellees.
Before COVINGTON, LOTTINGER and COLE, JJ.
LOTTINGER, Judge.
This automobile accident case comes before us solely on the issue of quantum. The plaintiff, Orelia Hanzy, appeals a trial court judgment awarding her $4,000.00 in general damages and $2,830.63 in special damages. Specifically, the plaintiff claims the trial court erred in refusing to award her any sum for loss of wages and in awarding only $4,000.00 in general damages.
The accident occurred on June 1, 1977, as plaintiff was returning from a meeting with representatives of Avon, with whom she had begun work as a sales person that day. Her 1973 Toyota, stopped in the right *357 lane of traffic while waiting to make a left turn, was struck from behind by an 18-wheeler driven by defendant, Clarence Sam. The plaintiff subsequently filed this suit against Sam; Sam's employer, Affiliated Foods, Inc.; and Affiliated's insurer, United States Fidelity and Guaranty Company.
The suit was tried on the issue of quantum alone. The plaintiff testified that she told the investigating police officer at the scene that she was hurt. Later that day, she went to the emergency room of a local hospital where she received medication for a sore neck and a cervical collar for neck support.
Two days after the accident, Ms. Hanzy made the first of what was to become a long series of visits to the doctor's office. After three visits with her family doctor, plaintiff was referred to Dr. Lawrence Russo, Jr., an orthopedic surgeon.
The plaintiff testified she was virtually bedridden for the four-month period between June and September. She was hospitalized for 10 days from August 31 to September 9 and placed in traction for 24 hours a day. The plaintiff said her neck hurt constantly from June, 1977, to January, 1978. She also complained of back pain and frequent headaches. She enrolled at Nicholls State University in the fall semester, 1977, but had to drop out because of neck pain and because of the difficulty the cervical collar was causing.
In a deposition submitted into the record, Dr. Russo testified he diagnosed Ms. Hanzy's condition as a moderate cervical strain, including injuries to tissues, muscles and ligamentous areas of the cervical spine.
At first, Dr. Russo required the plaintiff to undergo daily heat treatments at his office. He also prescribed muscle relaxants and mild pain medication. Later, however, when Ms. Hanzy's condition did not improve as it normally should have, Dr. Russo ordered her hospitalized for intensive physical therapy.
The plaintiff saw Dr. Russo a number of times after her hospitalization and he continued conservative treatments. Examination by two other physicians confirmed that the plaintiff did not have a herniated disc, a fracture or nerve root damage. Dr. Russo said there was no evidence that Ms. Hanzy was faking her injuries and he felt Ms. Hanzy had a "fairly significant injury to her neck."
Ms. Hanzy's last visit to Dr. Russo before the trial was on October 18, 1978some one year and four months after the accident. She still complained of neck pain and headaches. Dr. Russo said Ms. Hanzy can expect to suffer pain for the next six to twelve months and even thereafter when the weather changes or when other circumstances aggravate her injury.
The plaintiff testified she could not work from the time of the accident until January, 1978. However, her sister took over her Avon route during this time and earned $2,834.27 from cosmetic sales. Ms. Hanzy testified that her sister kept all of the money earned during this time, although all sales were made on Ms. Hanzy's Avon account. Neither reported this income on her tax return.

GENERAL DAMAGES
We are once again faced with the troublesome issue of appellate review of a trial court's general damage award. Much of the trouble exists because of two opposing policy considerations which are manifested in our constitution and statutes. The Constitution empowers appellate courts to review both fact and law on appeal. La.Const. Article 5, § 10(B). However, La. C.C. art. 1934(3) gives trial courts and juries "much discretion" in assessing tort damages. If a trial court's much discretion is to be given any weight, then appellate review of damage awards must necessarily be limited to the exceptional cases in which the trial court has clearly abused its discretion. But what constitutes "much discretion" and "clear abuse" has not been adequately addressed in our law or in our jurisprudence, probably because of the slippery nature of the concept of general damage awards, i. e., awards for physical and mental pain and suffering, grief, mental anguish, etc.
*358 Instead of attempting the probably impossible task of defining "much discretion" and "clear abuse," our Supreme Court has tried to establish a framework for applying these concepts. In the recent case of Reck v. Stevens, 373 So.2d 498 (La. 1979), the court established a two-step process for appellate review of general damages. Before an appellate court can even think of raising or lowering a trial court's award, it must first make an articulated finding that the trial court abused its discretion. Significantly, a finding of abuse must be based on facts in the record before the appellate court, and not on past cases which appear to be similar to the case before the court. Only after finding an abuse of discretion can the appellate court proceed to the second step of determining an adequate award. While past cases may be helpful in determining what the proper award should be, only truly similar cases should be relied upon because no two cases are alike. If the appellate court determines an award should be raised or lowered, it can only raise or lower the award to the highest or lowest point which would have been within the trial court's discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1977).
In a recent case before this circuit, we affirmed a $12,500.00 award to a plaintiff whose injuries were similar, though perhaps not truly similar, to those of the plaintiff in this case. Engolia v. Cumis Insurance Society, 383 So.2d 1055, No. 13144 on the docket of the First Circuit Court of Appeal. We noted in that case the difficulty of following our Supreme Court's rules on appellate review of quantum, and opined that the Supreme Court favored a hands-off policy on quantum unless an award was so exceptionally wrong that even the Supreme Court would amend it.
In again attempting to determine what the Supreme Court meant in its admonition to the courts of appeal, we are reminded that the trial judge or jury is not a computer into which facts and circumstances can be fed and out of which comes a uniform answer no matter where in the state the computer is located. These are not workmen's compensation cases where there is a schedule of benefits which have been standardized by the legislature. There is no pigeon hole into which we can place each award. Judges and jurors are all possessed with the fallible characteristics of human beings, thus awards for seemingly similar injuries will seldom be the same.
It is not the function of the appellate courts, including the Supreme Court, to standardize general damage awards across the state in cases with similar facts. Our purpose and our constitutional role is to guarantee by appellate review that the trial judge or jury in fulfilling its role has not so excessively abused its much discretion that our consciences would be shocked if such an award were allowed to remain untouched.
The shocking of the conscience concept means simply that if the award is so excessively high or low as to shock a reviewing court into the realization that it must correct the award, then so be it. An award must be so out of line as to cry out for a change. But in doing so, the reasons why must be articulated; that is, they must be spelled out in detail and not in generalities. Stated another way, the opinion of the intermediate appellate court must convince the Supreme Court that the trial judge or jury abused that much discretion. To say that it has is not enough.
Certainly one can say without contradiction that a $100.00 award for pain and suffering for an individual who must endure the pain of third degree burns over a major portion of his body for sometime before medical assistance is rendered is shocking and certainly a flagrant abuse of discretion. By the same token, a $100,000 general damage award for injuries the same as those in the instant case would also be shocking. Our point of course is that there is no manual that one can look to for the answer as to what is shocking enough to constitute an abuse of discretion. Whether a particular award shocks the conscience will depend to a large extent on the philosophical makeup of the reviewing court. But importantly, if a change is to be made, *359 it must not be merely a slight change in the award. It must not be a change merely because the reviewing court would have given a different amount. If any change is made, it must be made because the trial award is so out of line with reality that it is shocking and would constitute an injustice if allowed to stand.
Plaintiff-appellant has referred us to cases where higher awards have been made. Defendant on the other hand has referred us to cases where lower awards were made. Considering all of the facts and circumstances, we are of the opinion that this case does not fall within the parameter of the shocking of the conscience concept, and therefore find no error in the general damage award.

LOSS OF WAGES
The trial judge made no award to plaintiff for loss of wages and gave no written or oral reasons as to why he refused to do so. Considering the facts as presented by plaintiff and her sister, and in particular that neither reported this income on her tax return, we view the trial judge's refusal to make an award a credibility question. He apparently did not believe plaintiff. He saw and heard these witnesses testify, is in a better position to judge their credibility, and we will not interfere with his decision.
Therefore, for the above and foregoing reasons, the judgment of the trial court is affirmed at plaintiff-appellant's costs.
AFFIRMED.