577 So.2d 155 (1991)
Leroy VALET
v.
CITY OF HAMMOND and ABC Insurance Co.
John GERAGE and Katherine Gerage
v.
Leroy VALET and State Farm Mutual Automobile Insurance Company.
Nos. CA 89 1835, CA 89 1836, CA 90 1197 and CA 90 1198.
Court of Appeal of Louisiana, First Circuit.
March 5, 1991.
*157 Gordon W. Matheny, Chris Moody, Hammond, for John & Katherine Gerage.
Tom H. Metheny, Hammond, Dermot S. McGlinchey, Margaret Diamond, James M. Garner, New Orleans, for City of Hammond.
Adrianne Baumgartner, Covington, for Leroy Valet.
Before LOTTINGER, SHORTESS and CARTER, JJ.
LOTTINGER, Judge.
The City of Hammond (Hammond) suspensively appeals two separate judgments rendered against it in the second of two consolidated cases arising from a head-on collision automobile accident. Both appeals will be considered in this opinion.
The first judgment appealed by Hammond (CA 89 1835-1836) was the granting of Mr. Leroy Valet's peremptory exception raising the objection of res judicata and/or motion for summary judgment, and the dismissal of Hammond's third party claim *158 for indemnity against Mr. Valet.[1] Mr. Valet has answered this appeal seeking damages for frivolous appeal.
The second judgment appealed by Hammond (CA 90 1197-1198) was rendered after trial on the merits of the Gerages' claim. The trial court held that Hammond was liable to the Gerages under both the theories of negligence and strict liability, and apportioned fault at ninety percent to Hammond and ten percent to Mr. Valet. The trial court assessed Mr. Gerage's damages as $417,445.07, and Mrs. Gerage's damages as $35,000.00.[2]

FACTS
On March 11, 1986, at approximately 12:00 noon, Mr. Valet was driving his pickup truck 35 to 40 m.p.h. in an easterly direction on C.M. Fagan Drive within the city limits of Hammond. As he entered a slight left hand curve on Fagan Drive, the right wheels of his vehicle inadvertently left the paved portion of the highway on the right side.
When Mr. Valet realized that his right wheels had left the paved portion of the highway, he did not apply his brakes or wait for his vehicle to slow down, but rather tried to get back onto the highway immediately. There were no obstructions on the shoulder nor any other exigent circumstances which necessitated an immediate return to the paved portion of the highway.
When Mr. Valet attempted to pull back onto the highway, his tires encountered a seven inch drop-off from the paved portion of the road down to the shoulder. The steep drop-off caused Mr. Valet's tires to skid along the edge of the pavement for a short distance before climbing onto the highway. This caused the rear of the truck to swing around to the right, or fish-tail, as it came back onto the road.
Mr. Valet then lost control of his truck, crossed the center line into the west-bound lane, and struck a west-bound vehicle, driven by Mr. Gerage, head-on. Mr. Valet did not see the drop-off before he tried to get back on the highway. Both Mr. Valet and Mr. Gerage were alone in their respective vehicles at the time of the accident.
Mr. Valet suffered serious, permanent and disabling injuries to his body, particularly to his chest and jaw. Mr. Gerage was pinned against his steering wheel for at least twenty minutes following the accident and had to be extricated from the vehicle by emergency personnel using a device called "the jaws of life." He suffered severe injuries to his entire body, especially to his head, and spent a total of nine days in the hospital, including three days in intensive care, following the accident.
The drop-off encountered by Mr. Valet as he attempted to re-enter the highway existed because of some combination of improper shoulder construction and/or improper maintenance of the shoulder. Construction of C.M. Fagan Drive began in 1981 under contract from the City of Hammond, and the road was opened to the public in December of 1982. However, the shoulder work was never completed to the City of Hammond's specifications, even though the City accepted the roadway as "substantially complete", and opened it to traffic.[3]
Following the opening of the roadway to traffic, the City and its contractor became *159 embroiled in litigation which concerned, in part, the incomplete shoulders. The City and its contractor ultimately settled their differences over the construction of the roadway, but the shoulders were never completed. Instead the City placed "low shoulder" signs at various points along the road, and these were in place at the time of the accident, although it is unclear from the record if any were in the immediate vicinity of the accident. The City cites economic considerations as the reason the shoulders were not completed.
Sometime between the opening of the road in December of 1982, and the time of the accident in March of 1986, the drop-off, or rut, which contributed to the accident was formed. The evidence indicates that the steepness of the shoulder created the potential for severe erosion and that the rut was indeed caused by the erosion of the shoulder.[4]
Mr. Howard Ridgedell, the Superintendent of Streets and Parks for the City of Hammond, whose job it is to oversee the maintenance of the roads in the City of Hammond, testified that soon after C.M. Fagan Drive was completed, his crew placed shells and clay along the shoulders in various places along that road to repair erosion damage. Mr. Ridgedell testified that this repair, made soon after construction, was the only time that his crew repaired erosion damage on the shoulder of C.M. Fagan Drive. When shown the photographs of the shoulder which were introduced into evidence, Mr. Ridgedell admitted that it needed repair.

PROCEDURAL HISTORY
Two personal injury suits were filed as a result of this accident. On June 23, 1986, Mr. Valet filed suit against Hammond and the ABC Insurance Company[5]("Valet v. City of Hammond"). Hammond filed a third party demand against Mr. and Mrs. Gerage for indemnity or contribution in this suit. On October 8, 1986, the Gerages filed suit against Mr. Valet and State Farm ("Gerage v. Valet"). The Gerages sued State Farm in its capacity as the Gerages' uninsured motorist carrier and Valet's liability insurer. This suit was later amended to add Hammond as a defendant.
Valet v. City of Hammond was tried on the merits on February 25, 1987. The trial court apportioned one hundred percent of the fault for the accident to the City of Hammond and held them liable to Mr. Valet. A judgment was entered on July 8, 1987 in favor of Mr. Valet and against Hammond. From this judgment, Hammond appealed suspensively, and Mr. Valet appealed devolutively. Thereafter, a settlement was reached between Mr. Valet and Hammond, and a joint motion to dismiss the two appeals in Valet v. City of Hammond was filed on July 8, 1988.
Meanwhile, on April 20, 1987, Valet v. City of Hammond and Gerage v. Valet were consolidated on motion of Mr. Valet and State Farm. Then, in May 1987, prior to the judgment rendered in Valet v. City of Hammond, the Gerages entered into a settlement agreement with Mr. Valet and State Farm, thereby releasing their claims against these two parties in consideration for $25,000. The Gerages filed a limited motion to dismiss Mr. Valet and State Farm in June of 1987. Pursuant to this motion, Mr. Valet and State Farm were *160 dismissed, with prejudice, as defendants in Gerage v. Valet.
On March 21, 1989, Hammond amended its answer in Gerage v. Valet, to include a demand for contribution from Mr. Valet. Mr. Valet asked that Hammond voluntarily dismiss its third party demand against him since the settlement agreement had released him of any further liability. Hammond refused to dismiss its third party claim voluntarily. Thus, on July 17, 1989, Mr. Valet filed a peremptory exception raising the objection of res judicata and/or a motion for summary judgment as to Hammond's third party claim for contribution against Mr. Valet.
Hammond contended that it was not a party to the settlement agreement between the Gerages, Mr. Valet and State Farm, nor was it informed of the existence of such agreement. Mr. Valet contended that Hammond was informed of the settlement agreement and that Hammond was provided copies of the releases shortly after the settlement in 1987 and again after the third party demand was filed in March 1989.
On August 7, 1989, the trial court granted the peremptory exception raising the objection of res judicata and/or motion for summary judgment, and dismissed, with prejudice, Hammond's third party claim for contribution against Mr. Valet in Gerage v. Valet. From this judgment, Hammond has filed the first of the instant suspensive appeals. Mr. Valet answered this appeal, and seeks damages for frivolous appeal.
On September 12, 1989, the trial court, over Hammond's objection, proceeded with a trial on the merits of the Gerages' claims against Hammond in Gerage v. Valet,[6] The trial court found that the City of Hammond had the exclusive care, custody, and control of the roadway in question; that the shoulder near the scene of the accident was defective or unreasonably dangerous for normal use; that the City of Hammond had actual knowledge of the defective condition yet failed to correct it; and that the defect was a substantial factor in causing the accident and resulting damage to Mr. Gerage.
The trial court held that the City of Hammond was liable to the Gerages both in negligence and strict liability. It apportioned fault at ninety percent to the City of Hammond, and ten percent to Mr. Valet. Judgment was entered for the amount previously set forth above in favor of the Gerages and against Hammond on February 22, 1990.

VALET v. CITY OF HAMMOND

APPEAL NO. CA 89 1835-1836
Hammond's first appeal is limited to the following issues: (1) whether the trial court's ruling on Mr. Valet's peremptory exception raising the objection of res judicata and/or motion for summary judgment was in error, and (2) whether the trial court erred by proceeding with a trial on the merits after the trial judge had signed an order of suspensive appeal. In answering the appeal, Mr. Valet seeks damages for frivolous appeal.

DISMISSAL OF THE THIRD PARTY DEMAND
The issue here is whether the Gerages' settlement with and release of Mr. Valet and his insurer, State Farm, precludes Hammond from seeking contribution or indemnity from Mr. Valet. The parties to the settlement agreement were the Gerages, Mr. Valet and State Farm. Hammond contends that it should not be precluded from suing Mr. Valet for contribution for the claims of the Gerages because of an existing settlement agreement to which it was not a party. Additionally, Hammond contends that the settlement agreement did not have the effect of completely releasing Mr. Valet and State Farm from any further proceeding, especially since Hammond had not even received notice of the release.
La.Civ.Code art. 1803 sets forth a remedy for a solidary obligor who may be disadvantaged as a result of an obligee's decision to settle with another solidary obligor. *161 La.Civ.Code art. 1803 provides in pertinent part:
Remission of debt by the obligee in favor of one obligor, or a transaction or compromise between the obligee and one obligor, benefits the other solidary obligors in the amount of the portion of that obligor.
According to this article, the solidary obligor who has not settled with the obligee is entitled to have the obligee's recovery reduced by the amount of the released obligor's portion of fault or liability. When an obligee settles and releases a solidary obligor, the remaining solidary obligors are deprived of their right to contribution against the solidary obligor who has been released. This is a well settled rule and was first established in Harvey v. Travelers Insurance Company, 163 So.2d 915 (La.App. 3rd Cir.1964). See, Recard v. Trinity Universal Insurance Co., 503 So.2d 519 (La.App. 3rd Cir.), writ granted, 506 So.2d 105 (La.1987), dismissed by joint motion 509 So.2d 1011 (La.1987); Garrett v. Safeco Insurance Company, 433 So.2d 209 (La.App. 2nd Cir.1983).
Pursuant to Article 1803, any right that Hammond may have had against Mr. Valet in contribution was lost as a result of the Gerages' release of Mr. Valet. Since Hammond no longer had a right to contribution from Mr. Valet, the third party claim for contribution filed by Hammond was without merit. Therefore, the trial court did not err in granting the peremptory exception raising the objection of res judicata and/or motion for summary judgment and dismissing Hammond's third party claim against Mr. Valet.
However, La.Civ.Code art. 1803 provides Hammond with an equitable remedy. Under the terms of this article, Hammond is entitled to have the trial court determine Mr. Valet's percentage of fault in causing the accident, and is then entitled to have the amount of the Gerages' award reduced by the percentage of negligence assessed to Mr. Valet, the released obligor. This is exactly what the trial court did. This assignment of error lacks merit.

TRIAL COURT'S JURISDICTION OVER THE MAIN DEMAND
Hammond next contends that the trial court erred in proceeding with a trial on the merits in the main demand once an order granting this suspensive appeal was signed. Pursuant to La.Code Civ.P. art. 2088[7] Hammond argues that the trial court was divested of jurisdiction from the moment that the trial judge signed the motion and order for suspensive appeal.
Hammond argues that the circumstances of this case do not fall under any of the enumerated situations set forth in La.Code Civ.P. art. 2088; therefore, jurisdiction over this case vests with the court of appeal *162 rather than the trial court once the motion and order for suspensive appeal was signed.
La.Code Civ.P. art. 2088 is not drafted as narrowly as Hammond would have this court believe. The statute specifically provides that the trial court's jurisdiction is divested only as to those matters that are "reviewable under the appeal." The trial judge granted Mr. Valet's peremptory exception raising the objection of res judicata and/or motion for summary judgment and dismissed the third party claim filed by Hammond against Mr. Valet. The granting of this exception/motion and the dismissal of Mr. Valet, together with the issue of whether the trial court retained jurisdiction over the merits of the main demand were the only matters appealed in CA 89 1835-1836.
The merits of the main demand filed by the Gerages are not reviewable by this court in CA 89 1835-1836. Hammond itself specifically points this out in its original and supplemental briefs. "This appeal is on the very narrow issues of the judgment of August 7, 1989 together with the issue of the error of the trial court in proceeding with the case." Hammond's original brief in CA 89 1835-1836 at p. 5. "The issues of law concerning fault and the exorbitant financial judgment would be more appropriate at another time." Hammond's supplemental brief in CA 89 1835-1836.
According to La.Code Civ.P. art. 2088, only those matters that are "reviewable on appeal" are removed from the jurisdiction of the trial court. In Hammond's appeal from the trial court's dismissal of its third party demand for contribution, only those issues posed by the judgment granting the peremptory exception raising the objection of res judicata and/or motion for summary judgment and dismissing the third party demand for contribution are subject to review by this court on appeal.
The judgment appealed from did not touch upon or adjudicate any of the Gerages' claims against Hammond. Since the trial court was divested of jurisdiction only as to the issues which were the subject of the judgment appealed from, the trial court maintained jurisdiction over the merits of the main demand and did not err in proceeding with a trial on the merits once it signed the motion and order for suspensive appeal.
Furthermore La.Code Civ.P. art. 1915[8] allows the trial court to render a partial final judgment and retain jurisdiction over the remaining issues in the case. The August 7, 1989 judgment granting the peremptory exception raising the objection of res judicata and/or motion for summary judgment and dismissing the third party demand was such a partial final judgment, and the trial court retained jurisdiction to resolve the remaining issues in the case. Neither La.Code Civ.P. art. 2088 nor La. Code Civ.P. art. 1915 dictate that the trial court stay any further proceeding in the Gerages' main demand for damages against Hammond as a result of this appeal. This assignment of error lacks merit.
Not only does this issue lack merit, but it is also well settled as evinced by this court's decision in Welch v. Crown-Zellerbach Corp., 365 So.2d 586 (La.App. 1st Cir.1978), where the effects of La.Code *163 Civ.P. art. 2088 in conjunction with La.Code Civ.P. art. 1915 were discussed:
This article [2088] is to be understood to divest the trial court of jurisdiction over the case when the appeal is taken only with respect to those matters which are reviewable under the appeal. Therefore, since the January 24, 1977 judgment mentioned only the sustaining of peremptory exceptions and the dismissal of plaintiff's suit as to Crown Zellerbach, it was the only matter reviewable on appeal and therefore only this fell under the divesting effect of CCP Article 2088. Walker v. Jones, 257 La. 404, 242 So.2d 559 (1970).
While we appreciate the problems involved in this lengthy and procedurally complicated case, we find that the trial court was not divested of jurisdiction as to Campbell's and Southern's exception when Welch was granted its devolutive appeal as to the sustaining of Crown Zellerbach's peremptory exceptions.
Welch, 365 So.2d at 590.
This rule is similarly applicable where a suspensive appeal is taken:
In this suspensive appeal the jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, "on the timely filing of the appeal bond."
Guilliot v. City of Kenner, 326 So.2d 359, 362 (La.1976) (emphasis added).

ANSWER TO APPEAL NO. CA 89 1835-1836
Mr. Valet, by way of answer, seeks damages for frivolous appeal, arguing that this appeal, if not the filing of the third party demand, by Hammond is in bad faith and frivolous. Damages for frivolous appeal are authorized in La.Code Civ.P. art. 2164.[9] The courts have been very reluctant to grant damages under this article as it is penal in nature and must be strictly construed.
Appeals are favored and damages for frivolous appeal will not be awarded unless it manifestly appears that appeal was taken solely for delay or that appealing counsel does not seriously believe in the position he advocates, even though the appeal lacks serious merit. Jackson v. East Baton Rouge Par. Sch. Bd., 348 So.2d 739 (La.App. 1st Cir.1977). Even though, in our opinion, the instant appeal lacks serious merit, we cannot say that the appeal was taken solely for delay or that plaintiff's counsel did not seriously and earnestly believe in and advocate plaintiff's position.
Weatherall v. Department of Health and Human Resources, 432 So.2d 988, 997 (La. App. 1st Cir.), writ denied, 437 So.2d 1150 (1983).
Under the court's analysis in Weatherall, we must first determine if the appeal lacks merit. The rule concerning an obligor's right to contribution against a solidary obligor who has been released by the obligee has been settled since Harvey v. Travelers Insurance Company. The obligee's act of settling and releasing a solidary obligor deprives the remaining solidary obligors of their right to contribution against the solidary obligor who has been released.
The foundation of Hammond's argument is that its right to contribution survived the Gerages release of Mr. Valet because it was not a party to the release agreement. Hammond was unable to cite any support for its position because the existing law and jurisprudence are to the contrary. Hammond's sole remedy at law is to have the trial court proportionately reduce the Gerages' award by the percentage of fault attributable to Mr. Valet. Considering the jurisprudence and La.Civ.Code art. 1803, this court finds that the trial court dismissal was proper and any claim to the contrary is without serious merit.
In addition to finding that the appeal lacks serious merit, the court must find *164 that the appeal was taken solely for delay or that the appealing counsel does not seriously believe in the position he advocates. Hammond's second assignment of error indicates this appeal was taken in hopes of staying the trial court proceeding at least until the appeal is decided by this court. A review of Hammond's brief on the issue of the dismissal of the third party demand raises no legitimate issues. It does not even discuss the applicable law. It is obvious that Hammond had no basis in the law other than to attempt to delay the trial of the Gerages' claims. Considering Hammond's failure to support the position it advances, it is difficult for this court to find that counsel for Hammond was serious in advocating his position. Therefore, we will grant Mr. Valet's demand for attorney's fees under La.Code Civ.P. art. 2164.

GERAGE V. VALET

APPEAL NO. CA 90 1197-1198
In this appeal from the final judgment of the trial court after a trial on the merits of the Gerages' claim, Hammond urges seven specifications of error. However, there are only three basic issues presented in this appeal, and the seven specifications of error are merely different arguments on one or another of these three issues. The issues are: (1) the liability of the City of Hammond to the Gerages, (2) the apportionment of fault between the City of Hammond and Mr. Valet, and, (3) the quantum of the damages awarded to the Gerages.

LIABILITY OF THE CITY OF HAMMOND
By specification of errors one, two, and three, Hammond contends that the trial court erred in finding that the shoulder was defective, that Hammond had actual or constructive knowledge of the defect and failed to remedy it within a reasonable time, and that the defect was a causative factor in the accident and resulting injuries. In specification of error six, Hammond contends that it is immune from liability to the Gerages based on La.R.S. 9:2798.1, the discretionary function exception to governmental tort liability, and that it was error for the trial court not to consider this statute.

ARTICLE 2315/2317 LIABILITY
The trial court held Hammond liable to the Gerages based on both negligence and strict liability. Since the enactment of La.R.S. 9:2800, the elements which must be proved in order for a plaintiff to recover damages from a public entity defendant based on the defective condition of a roadway are the same whether based on negligence or strict liability.[10] The plaintiff must prove under either theory that: (1) the defendant owned or had custody of the thing which caused the damage; (2) the thing was defective in that it created an unreasonable risk of harm to others; (3) the defendant had actual or constructive knowledge of the defect or risk of harm posed thereby and failed to take corrective action within a reasonable time; and, (4) causation.
The trial court found all four of the above elements were proven by the plaintiff. Hammond contends the trial court erred in all but the first of these findings. These findings by the trial court that the shoulder of C.M. Fagan drive was defective, that Hammond knew of the defect but failed to repair it within a reasonable time, and that the defective shoulder was a substantial factor in causing the accident, are findings of fact which will not be set aside on appeal absent manifest error. Rosell v. Esco, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
*165 We cannot say that the finding by the trial court, that the shoulder of C.M. Fagan Road was defective or unreasonably dangerous for normal use, was manifestly erroneous. The shoulder in question had a drop-off, or rut, over one hundred feet long and from four to seven inches deep. All of the experts testified that this was a dangerous condition, and we agree that this much of a drop-off clearly constitutes a defective or unreasonably dangerous condition.
Nor is the trial court's finding that Hammond knew of the defect and failed to remedy it within a reasonable time manifestly erroneous. After the road was built and accepted as substantially complete, the City of Hammond withheld final payment to its contractor in part because the shoulders had not been completed to its satisfaction or specifications. The contractor sued for the balance owed under the contract, and Hammond ultimately settled with the contractor.
However, instead of completing the shoulders, Hammond chose merely to erect "low shoulder" signs along the road. It is obvious from the placement of the "low shoulder" signs and the litigation involving the incompleted shoulders, that Hammond was aware that the shoulders did not meet the specifications called for in the contract.
Even though Hammond knew of the substandard nature of the shoulders of C.M. Fagan Drive, it made no attempt to repair them except to erect "low shoulder" signs. While the placement of these signs may have been sufficient to warn of a steeply sloping, narrow shoulder, they were not sufficient to warn of the steep drop-off that existed between the pavement and the shoulder near the scene of the accident.
Additionally, the City of Hammond knew of the potential for erosion along the shoulder and that erosion did in fact occur, as evinced by the repairs to correct erosion damage soon after the road was constructed. Yet from the time these repairs were made, "soon after" construction was completed, no additional erosion repairs were made until the time of this accident, although erosion was obviously occurring.
The finding by the trial court that the drop-off was a substantial cause of the accident was also not manifestly erroneous. Mr. Valet testified that he lost control of his vehicle when his right wheels encountered the drop-off. The police officer who investigated the accident testified as to the existence of a "pretty good drop-off" where Mr. Valet came back onto the road, and there were "scuff marks" left by his tires extending from the drop-off to the point of impact. Additionally, all of the accident reconstruction/road design experts testified that the drop-off contributed to Mr. Valet's loss of control of his vehicle. Hammond's specifications of error one, two, and three lack merit.

LA.R.S. 9:2798.1
By its specification of error number six, Hammond contends[11] it is immune from tort liability in this case pursuant to the discretionary function exception to tort liability applicable to governmental entities, La.R.S. 9:2798.1. This statute provides:
A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.
B. Liability shall not be imposed on public entities or their officers or employees based on the exercise or performance or the failure to exercise or perform their *166 policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policy-making or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
D. The legislature finds and states that the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the Constitution of Louisiana.
Hammond argues that its decision to accept C.M. Fagan Drive as substantially complete, and open it to the public, notwithstanding the substandard nature of its shoulders, was a discretionary governmental function, and it is therefore immune from liability arising from defects in the shoulder pursuant to La.R.S. 9:2798.1. In other words, Hammond argues this statute provides tort immunity to a governmental entity for injuries arising out of a defective roadway where the governmental entity makes a conscious decision to build, or accept from the contractor, a defective roadway.
While this is, in our opinion, a questionable proposition, it is one that we need not decide. The trial court specifically held Hammond liable based on its failure to maintain the shoulder, not on its decision to accept a substandard shoulder. The trial court stated in its written reasons that: "the operative fault of the City stems from its not properly maintaining the road shoulderand does not stem from the discretionary act of Hammond City officials accepting from the contractor a clearly substandard roadway."
It was the drop-off from the pavement to the shoulder which constituted the defect upon which the trial court based Hammond's liability. It is true that the erosion which created the drop-off was exacerbated by the lack of sufficient shells and the steep slope of the shoulder, but the testimony of the City's engineer was that when the road was accepted and opened to the public, the shoulders were flush with the edge of the asphalt. The trial court based Hammond's liability on its failure to properly maintain the shoulders and repair the erosion damage, not on its acceptance of defective shoulders.
The City of Hammond has a legal duty to maintain the shoulders of all non-state highways within its jurisdiction in a reasonably safe condition. Pickens v. St. Tammany Parish Police Jury, 323 So.2d 430 (La.1975); Moon v. City of Baton Rouge, 522 So.2d 117 (La.App. 1st Cir.), writ denied, 523 So.2d 1319, 1320, 1327 (La.1988); Keith v. Bearden, 488 So.2d 1071 (La.App. 2nd Cir.1986), amended and affirmed on other grounds, 498 So.2d 706 (La.1988). This duty includes the leveling of the shoulders when they become too low. Moon, 522 So.2d 117. C.M. Fagan Drive is within the city limits of Hammond, it was built by the City of Hammond, it is not a state highway, and neither the State nor any other governmental entity has assumed the responsibility for its maintenance. The duty to maintain its shoulders rests squarely on the City of Hammond.
This duty is one imposed by law on the City of Hammond. Whether or not to assume the duty to maintain the roads within their jurisdiction is not a policy-making or discretionary function of the City of Hammond. There is simply no decision to be made; the duty to maintain the roads in a reasonably safe condition exists depending on the location and classification of the particular road involved. A municipality such as the City of Hammond, or the DOTD for that matter, cannot decide what level of maintenance to provide; it must maintain the road in a reasonably safe condition. Failure to do so results in liability to those injured by the unreasonably dangerous condition.
*167 Of course, the decision to repair or perform maintenance on a particular road, and the extent of the repairs or maintenance, is a decision which the authority responsible for the upkeep and maintenance of that road, in this case the City of Hammond, must make. However, this is an operational decision, not a policy-making or discretionary function decision for which La.R.S. 9:2798.1 provides immunity.
The policy, i.e., to maintain the shoulders in a reasonably safe condition, has been made by the legislature. La.R.S. 48:35. Any decision made by Hammond regarding the maintenance of the shoulders of roads within its jurisdiction is operational in nature; such a decision merely implements, to one degree or another, the policy decision of the legislature. Operational decisions are not considered to be "discretionary" within the meaning of La.R.S. 9:2798.1 and are not shielded from liability thereby. Cf., Freeman v. State, 705 P.2d 918, 920 (Alaska 1985). Hammond's specification of error number six lacks merit.

APPORTIONMENT OF FAULT
By specifications of error four and five, the City of Hammond argues that the trial court erred in its apportionment of ninety percent fault to Hammond and ten percent fault to Mr. Valet. The City contends that Mr. Valet was one hundred percent at fault in that he was negligent in running off the road in the first place, and also negligent in the manner in which he came back onto the road.
The apportionment of fault among co-tortfeasors is a finding of fact. Motton v. Travelers Insurance Company, 484 So.2d 816 (La.App. 1st Cir.1986); Gilder v. Branton, 471 So.2d 976 (La.App. 1st Cir. 1985); Efferson v. State, Department of Transportation & Development, 463 So.2d 1342 (La.App. 1st Cir.1984), writ denied, 465 So.2d 722 (La.1985). Findings of fact will not be set aside on appeal unless found to be manifestly erroneous. Rosell, 549 So.2d 840; Arceneaux, 365 So.2d 1330.
In this case, Mr. Valet ran partially off the road for no apparent reason, then immediately tried to get back on without waiting for his vehicle to slow down, notwithstanding the lack of obstructions on the shoulder immediately ahead. He then lost control of his vehicle upon reentry onto the road due to an unreasonably dangerous drop-off between the shoulder and the road. There was clearly negligence on the part of both Mr. Valet and the City of Hammond.
Mr. Valet's negligence was an active cause of the accident and subsequent injuries to Mr. Gerage, whereas, Hammond's negligence, although a substantial cause of the accident and resulting injuries, was more passive in nature. It was therefore manifest error for the trial court to assign only ten percent of the blame for this accident to Mr. Valet.
Considering the evidence, and the factors set out in Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985), it is our opinion Mr. Valet and the City of Hammond are equally to blame for this accident. Mr. Valet inadvertently allowed the right wheels of his vehicle to leave the paved portion of the road and go onto the shoulder. This was negligence, although slight negligence on his part. Mr. Valet then compounded this slightly negligent act by attempting an immediate re-entry onto the road without slowing down, even though there were no obstructions on the shoulder ahead or other exigent circumstances, and in the face of oncoming traffic.
The City of Hammond failed to adequately maintain the shoulder of the road where Mr. Valet attempted to reenter it. This lack of proper maintenance lead to the formation of the drop-off of up to seven inches between the pavement and the shoulder which caused Mr. Valet to loose control of his vehicle.
In light of the above, we apportion fault at fifty percent to Mr. Valet, and fifty percent to the City of Hammond. See, Brooks v. City of Baton Rouge/Parish of East Baton Rouge, 558 So.2d 1177 (La. App. 1st Cir.), writ denied, 566 So.2d 982 (La.1990). Accordingly, the City of Hammond is entitled to a fifty percent reduction *168 from the total amount of damages suffered by the Gerages.

QUANTUM
By specification of error number seven, Hammond contends that the trial court erred in awarding excessive general and loss of consortium damages to the plaintiffs. The trial court assessed Mr. Gerage's general damages as being $400,000.00, including impairment to earning capacity, and Mrs. Gerage's loss of consortium damages as being $35,000.00.[12]
Before an appellate court will alter the quantum of a trial court's award, the record must clearly reveal an abuse of the trier of fact's much discretion. Reck v. Stevens, 373 So.2d 498 (La.1979). A trier of fact has abused its much discretion only when the award is so excessively high or low that it shocks the conscience of the reviewing court such that it is compelled to correct the award. Hanzy v. Sam, 385 So.2d 355 (La.App. 1st Cir.), writ denied, 386 So.2d 357 (La.1980).
In written reasons for judgment, as to the issue of Mr. Gerage's damages, the trial judge found as follows:
These include remaining trapped in his vehicle for at least 20 minutes, "while jaws of life" were used to extract him from his vehicle, admission to ICU and inpatient status at Westpark Hospital for 9 days, including surgery, four fractured ribs and extensive bruising of his upper limbs and trunk; lacerations of the head and hip; a closed head injury with left cerebral contusion which has caused him to suffer from amnesia, impaired vision, and double vision. He has suffered from a loss of memory and has been diagnosed as having frontal lobe pathology. Mr. Gerage exhibits "Alzheimer's-like" symptoms of disorientation and confusion which was evident to the Court (sic) as he testified and sat at counsel table. He is unable to engage in farming activities and his sex life with his wife of many years is almost non-existent. There are times when he cannot remember the names of his own family members. He suffers a gross disfigurement of his left biceps muscle area and unattractive scarring at or near the left temple and forehead area. In short, this 72 year old plaintiff has forfeited the full enjoyment in every respect of his "golden years" as a result of this accident.
The trial court did not indicate in its written reasons what part of the $400,000.00 in general damages awarded to Mr. Gerage was for lost earning capacity. However, the plaintiffs contend in their brief that the trial court awarded $25,000.00 to Mr. Gerage for loss of earning capacity, and they do not complain of that amount. Therefore, we will accept $25,000.00 as the amount awarded to Mr. Gerage for loss of earning capacity. It follows that the trial court assessed Mr. Gerage's general damages as being $375,000.00.
Mr. Gerage's pain and suffering was undoubtedly substantial, and his loss of memory is a significant and debilitating injury. Therefore, we are of the opinion that $375,000.00, though on the high side, is not grossly excessive compensation for these injuries. Also, the award of $35,000.00 to Mrs. Gerage for loss of consortium, while on the high side, is not so excessive as to shock this court into reducing it. Hanzy, 385 So.2d 355.

CONCLUSION
Therefore, for the above and foregoing reasons, the judgment of the trial court granting Mr. Valet's peremptory exception of res judicata and/or motion for summary judgment and dismissing Hammond's third party claim for contribution is affirmed; and it is hereby ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Mr. Valet granting him damages for frivolous appeal in the amount of $750.00 against the City of Hammond.
Additionally, for the above and foregoing reasons, the judgment of the trial court is *169 amended insofar as the apportionment of fault between the parties is concerned; and it is hereby ORDERED, ADJUDGED AND DECREED that fault for the accident and resultant injuries is hereby apportioned at fifty percent to the City of Hammond and fifty percent to Mr. Valet.
Further additionally, for the above and foregoing reasons, the judgment of the trial court is affirmed insofar as the award of general damages to Mr. and Mrs. Gerage is concerned. The City of Hammond is entitled to a fifty percent reduction from these awards, due to the release of Mr. Valet.
The judgment of the trial court is affirmed in all other respects. Costs are assessed against the City of Hammond in the amount of $5,306.28.
AMENDED AND AFFIRMED AS AMENDED.
NOTES
[1] Prior to this judgment, Mr. Valet and his insurer settled with and were released by the Gerages.
[2] Mr. Gerage's damages are comprised of $17,445.07 for past and future medical expenses and $400,000.00 for general damages including impairment to earning capacity. Mrs. Gerage's damages are for loss of consortium only.

The judgment signed by the trial judge in favor of the Gerages and against the City of Hammond reflects a ten percent reduction of these awards due to the release of Mr. Valet by the Gerages. The judgment is in the amount of $375,700.57 to Mr. Gerage and $31,500.00 to Mrs. Gerage for loss of consortium.
[3] Mr. William Boden, the City of Hammond's engineer who drew up the plans and specifications for C.M. Fagan Drive, testified that when the contractor turned the road over to the City, the shoulders did not meet the specifications because they sloped down to the ditch at too steep of an angle. A report prepared by Mr. Boden in preparation for the litigation between the City and its contractor, introduced into evidence in this case, states that the shoulder was sloped so steeply that in effect the slope of the ditch began at the edge of the asphalt.
[4] Mr. William Burt, an expert in highway design, testified via deposition that the steepness of the shoulders when the road was opened created a potential for severe erosion and maintenance problems. Mr. Luther Cox, another expert in highway design, testified via deposition that from the photographs of the shoulders introduced into evidence, it appeared that the shoulders were in disrepair and in need of maintenance. Our own interpretation of these photographs is that erosion did in fact play a part in the creation of the drop-off at issue. These pictures depict the vertical edge of an asphalt road, which is several inches thick, resting on a layer of dirt several inches above the level of a sloping shell shoulder. The asphalt surface of the road extends out slightly farther than the dirt it is resting on. This indicates to us that the edge of the dirt foundation upon which the road is built has eroded away. The resulting condition is a very severe drop-off, or rut, of approximately six or seven inches between the surface of the road and the shell shoulder below.
[5] The petition was amended to add the ABC Insurance Company as a defendant.
[6] Whether or not it was proper to proceed with the trial of the Gerage's claim is an issue raised in the first of Hammond's two appeals and will be discussed below.
[7] La.Code Civ.P. art. 2088 provides:

The jurisdiction of the trial court over all matters in the case reviewable under the appeal is divested, and that of the appellate court attaches, on the granting of the order of appeal and the timely filing of the appeal bond, in the case of a suspensive appeal or on the granting of the order of appeal, in the case of a devolutive appeal. Thereafter, the trial court has jurisdiction in the case only over those matters not reviewable under the appeal, including the right to:
(1) Allow the taking of a deposition, as provided in Article 1433;
(2) Extend the return day of the appeal, as provided in Article 2125;
(3) Make, or permit the making of, a written narrative of the facts of the case, as provided in Article 2131;
(4) Correct any misstatement, irregularity, informality, or omission of the trial record, as provided in Article 2132;
(5) Test the solvency of the surety on the appeal bond as of the date of its filing or subsequently, consider objections to the form, substance, and sufficiency of the appeal bond, and permit the curing thereof, as provided in Articles 5123, 5124, and 5126;
(6) Grant an appeal to another party;
(7) Execute or give effect to the judgment when its execution or effect is not suspended by the appeal;
(8) Enter orders permitting the deposit of sums of money within the meaning of Article 4658 of this Code;
(9) Impose the penalties provided by Article 2126, or dismiss the appeal, when the appellant fails to timely pay the estimated costs or the difference between the estimated costs and the actual costs of the appeal; or
(10) Set and tax costs and expert witness fees.
[8] La.Code Civ.P. art. 1915 provides:

A. A final judgment may be rendered and signed by the court, even though it may not grant the successful party all of the relief prayed for, or may not adjudicate all of the issues in the case, when the court:
(1) Dismisses the suit as to less than all of the plaintiffs, defendants, third party plaintiffs, third party defendants, or intervenors.
(2) Grants a motion for judgment on the pleadings, as provided by Articles 965, 968, and 969.
(3) Grants a motion for summary judgment, as provided by Articles 966 through 969.
(4) Signs a judgment on either the principal or incidental demand, when the two have been tried separately, as provided by Article 1038.
(5) Signs a judgment on the issue of liability when that issue has been tried separately by the court, or when, in a jury trial, the issue of liability has been tried before a jury and the issue of damages is to be tried before a different jury.
B. If an appeal is taken from such a judgment, the trial court nevertheless shall retain jurisdiction to adjudicate the remaining issues in the case.
[9] La.Code Civ.P. art. 2164 provides:

The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. The court may award damages for frivolous appeal; and may tax the costs of the lower or appellate court, or any part thereof, against any party to the suit, as in its judgment may be considered equitable.
[10] La.R.S. 9:2800, which took effect prior to the accident at issue here, provides that before a public entity can be held strictly liable under civil code article 2317 for damages caused by a defective condition of a thing in its custody, it must have had actual or constructive notice of the defective condition that caused the damages and had a reasonable opportunity to remedy the defect but failed to do so. Since this type of notice is the only distinction between negligence under article 2315 and strict liability under article 2317; see, Kent v. Gulf States Utilities Company, 418 So.2d 493 (La.1982), the elements necessary to impose liability upon a public entity based on negligence or strict liability are now the same. Griffin v. City of New Orleans, 533 So.2d 1048 (La.App. 4th Cir.1988).
[11] In addition to the extensive arguments on this issue in the briefs of the parties, the following Louisiana cities, towns, and/or consolidated governments have filed amicus curiae briefs supporting Hammond's position on the applicability and effect of La.R.S. 9:2798.1 in this case: The Cities of Abbeville, Bastrop, Bogalusa, Gretna, Natchitoches, Oberlin, Opelousas, Pineville, Ridgecrest, Ruston, Slidell, Sulphur, Thibodaux, Vidalia, Ville Platte, West Monroe, Westwego, Zachary, the Town of Mooringsport, and the City of Baton Rouge/Parish of East Baton Rouge.
[12] The actual amount awarded to the Gerages in the judgment reflects a ten percent reduction from these amounts due to the trial court's apportionment of ten percent of the fault for the accident to Mr. Valet, who settled with and was released by the Gerage's.