LeBLANC, Judge.
This is an appeal from a judgment imposing liability on the State, through the Department of Transportation and Development (DOTD), for personal injuries suffered by plaintiff when the truck he was driving struck a hole in the median of an interstate highway. We reverse.
On August 26, 1988, plaintiff, Jack Tatum, was employed by Cook Construction, Inc., on a State contract job to resurface a portion of Interstate 12 (1-12). Upon being instructed by his supervisor to move the latter’s truck, plaintiff drove it in the median adjacent to the job site and struck a washout, or hole, located near a drainage culvert with such force that the frame of the truck was bent. As a result of his injuries, plaintiff now receives worker’s compensation benefits. He also filed the present tort suit against the State on the basis of strict liability and negligence.
Following trial, the court rendered judgment holding the State liable under La.C.C. art. 2317 on the grounds that the washout in the median was a defect, of which the State had constructive notice, creating an unreasonable risk of harm. The court also assessed fifty (50) percent fault to plaintiff *1092 because it found that “plaintiff was driving the truck at an excessive speed and without reasonable care for his own safety under the circumstances.” The trial court fixed plaintiffs total damages at $117,638.00, subject to a fifty (50) percent reduction. The State appealed, alleging numerous errors by the trial court. Plaintiff answered the appeal seeking an increase in damages and that the assessment of fault against him be set aside or, alternatively, reduced.
ANALYSIS
In order for liability to be imposed upon the State under La.C.C. art. 2317, one of the essential elements which must be proven is that the State “had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the ... [State] has had a reasonable opportunity to remedy the defect and has failed to do so.” La.R.S. 9:2800B. La.R.S. 9:2800C defines constructive notice as meaning “the existence of facts which infer actual knowledge.” In the instant case, the trial court, while noting that plaintiff offered no evidence that the State had actual notice of the existence of the washout, deemed it to have had constructive notice “based on the length of time the defective condition was present.”
There was no direct evidence or expert opinions presented to establish the length of time the washout was present on the median. The trial court gave the following reasons for its conclusion that the washout had existed for a sufficient period of time that the State should have discovered and remedied it:
Plaintiff testified that the grass on the median was three feet high. Defendant’s witness, Maurice Jordon, a DOTD maintenance engineer, acknowledged that at the time of this accident, the grass on medians was not being cut before it was eighteen to twenty-four inches high, in contravention of regulations which require grass to be cut when it reached twelve inches in height. The height of the grass together with the size of the washout, which was [sic] testimony indicated to be four feet wide, three feet deep and fifteen feet long, suggest a lapse of time sufficient to put the State on notice of a defect.
In support of its finding, the trial court cited the cases of Gullo v. Sewerage & Water Bd., 535 So.2d 23 (La.App. 4th Cir. 1988), and Baker v. Sewerage and Water Bd., 466 So.2d 720 (La.App. 4th Cir.1985).
Neither of the cases cited by the trial court supports its conclusion; Baker, in fact, does the opposite. In Baker, the plaintiff was injured when she stepped into an uncovered water valve box located on a public street. The court found the plaintiff failed to carry her burden of proof because it was not shown that the cover had been off for a “long duration”. The court specifically noted that the Water Board did not have the burden of showing that it conducted periodic inspections, but rather that plaintiff had the burden of proving that the “Water Board had constructive notice and did not remedy the situation.” Baker, 466 So.2d at 723.
Gullo is readily distinguishable from the present case on its facts. The plaintiff in Gullo was injured when he stepped onto a cracked water meter cover, which broke under his weight. The Sewerage and Water Board of New Orleans was found to have constructive knowledge of the crack because of the length of time it had existed. However, the plaintiff therein was walking on a public sidewalk at the time of his injury, and there was testimony that the crack in the cover would have been readily discoverable upon examination.
In contrast to the situation in Gullo, the plaintiff in the present case was driving a vehicle in the middle of the median on the interstate, which was not normally traversed by motorists, nor was it established that the existence of the washout, located some distance from the shoulder of the road, was readily discoverable. In fact, there was uncontradicted testimony by Mr. Maurice Jordon, a district maintenance engineer for DOTD, that such washouts are hard to discover by routine inspection because they are usually located some distance from the shoulder near the drainage culverts (or catch basins), in the center of *1093 the median, are sometimes covered by grass, and “[s]ometimes the erosion is occurring underground before it actually breaks through” and causes a cave-in. In describing how this erosion occurs, Mr. Jor-don explained:
It’s like an undermining. Normally the, probably what has happened is the culvert has developed a leak, either the joint has pulled apart or a weak hole was left in the catch basin and material, soil, would be pulled into the culvert, forming a cavity and, of course, when the cavity finally reaches a certain size, it would cave in, but up until that time you would not even expect anything to be wrong. Of course, if it’s a cave-in and bad enough, you could see it from the shoulders.
In view of this evidence, we believe the court’s reliance on the size of the washout to establish that it had existed for such a length of time that the State should have discovered it was misplaced. Since most of the erosion could have occurred before the existence of the washout manifested itself above ground, its mere size can not establish the requisite length of time. Nor do we believe that the height of the grass proved the washout existed for such a time period that the State should be deemed to have constructive notice of the washout, considering the location of the washout on a normally untraversed median and the other factors making it difficult to discover such washouts.[1]
In light of these factors, as well as the lack of any direct evidence indicating how long the washout had existed, we conclude the trial court was manifestly erroneous in finding that the State had constructive notice of the existence of the washout and a reasonable opportunity to remedy it. Therefore, we reverse the judgment of the trial court imposing liability on the State for plaintiff’s injuries, and hereby render judgment dismissing plaintiff’s claims against the State.[2] Plaintiff is to pay all costs of this appeal.
REVERSED AND RENDERED.

. The trial court seemed to place great significance on the fact that Mr. Jordan stated that, at the time of the accident in question, DOTD was not cutting grass on interstate medians until it was eighteen to twenty-four inches high, which the court noted was "in contravention of regulations which require grass to be cut when it reached twelve inches in height." In this regard, it should be noted that La.R.S. 9:2800D provides that “[a] violation of the rules and regulations promulgated by a public entity is not negligence per se.” Furthermore, there was no evidence to indicate that the washout would have been discoverable even had the grass been only twelve inches high, rather than the height it was.

. In brief, appellee argues that, even if strict liability under La.C.C. art. 2317 does not apply, liability should be imposed on the state on the basis of negligence because of the "loose nature of the Highway Department's inspection and documentation” of problems with washouts, which were acknowledged to be common. We disagree. We do not believe there is a duty on the part of the state to routinely inspect each of the drainage culverts or grates located on highway medians. In instances where the existence of a washout is observable while traveling on the roadway, the state may have a duty to discover and remedy it within a reasonable period of time. However, this was not shown to be the case herein. In order for the state to be held liable on the grounds of negligence for a defect or defective condition, it must be proven that it had actual or constructive notice of the defect or defective condition and failed to take corrective action within a reasonable time. Valet v. City of Hammond, 577 So.2d 155, 164 ft. 10 (La.App. 1st Cir.1991). As stated above, we find that the state had no such notice in the present case.