ROLAND L. BELSOME, Judge.
 

 11 Defendants-Appellants appeal the judgment awarded in favor of Plaintiff-Appellee. For the reasons that follow, we affirm the judgment as amended.
 

 FACTS AND PROCEDURAL HISTORY
 

 On October 7, 2004, Appellee Glenn Logan was struck by Defendant-Appellant Diana Johnson while she was operating a truck
 
 [1]
 
 in the course and scope of her employment with Brink’s, Inc. As Logan was driving on South Buchanan Street in
 
 *534
 
 Lafayette, Louisiana, Johnson was backing out of a driveway that ran perpendicular to South Buchanan Street. Logan, unable to avoid a collision, struck Johnson. As a result of the accident, Logan sustained injuries to his cervical and lumbar spine.
 

 The jury awarded Plaintiff-Appellee $1,229,057.00
 
 [2]
 
 and assigned 15% fault to Plaintiff; the trial court signed a judgment in conformity with the jury’s findings | aon June 6, 2008. The jury assessed penalties to Brink’s insurer under La. R.S. 22:1220 for arbitrary and capricious failure to timely pay Appellee’s property damage claim in the amount of $3,782.00. The court denied Appellants’ motion for a new trial, and this appeal followed.
 

 STANDARD OF REVIEW
 

 Our standard of review was articulated by the Louisiana Supreme Court in
 
 Rosell v. ESCO:
 

 It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of “manifest error” or unless it is “clearly wrong,” and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The appellate review of fact is not completed by reading only so much of the record as will reveal a reasonable factual basis for the finding in the trial court, but if the trial court or jury findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong. In applying the manifestly erroneous-elearly wrong standard to the findings below, appellate courts must constantly have in mind that their initial review function is not to decide factual issues
 
 de novo.
 

 [3]
 

 Rosell v. ESCO,
 
 549 So.2d 840, 844-45 (La.1989)(internal citations omitted).
 

 |:! APPELLANTS’ ASSIGNMENT OF ERRORS
 

 Appellants list five assignments of error for our review: 1.) that the trial court
 
 *535
 
 improperly excluded witnesses to a second accident involving Appellee that occurred on August 28, 2005; 2.) that the trial court erroneously instructed the jury to apply an adverse presumption against Appellants due to an unintentional loss of photographs taken by Ms. Johnson immediately after the accident; 8.) that the trial court erroneously allowed La. R.S. 22:1220 penalties; 4.) that the trial court erroneously allowed duplicative recovery in permitting the jury to make separate awards for both loss of future earnings and loss of earning capacity, and erroneously denied Appellants’ JNOV; and 5.) that there was insufficient evidence to support a $70,000.00 award for future medical expenses.
 

 Appellee Logan also assigns two errors for our review: 1.) that the jury erred in assessing 15% of fault to him; and 2.) that the trial court erred in failing to award the full amount of costs assessed by his expert, Steve Killingsworth ($11,572.53).
 

 DISCUSSION
 

 Appellants’ Assignment of Error # 1
 

 Appellants first argue that the trial court improperly excluded witnesses to a second accident involving Appellee that occurred on August 28, 2005. Appellants submit that they did not obtain a copy of Logan’s August 28, 2005 accident report from Appellee’s counsel until twenty-one days prior to trial. The August 2005 accident report listed the identities of witnesses to the accident. Appellants submit that upon learning this information, and pursuant to an order extending the discovery deadline, Appellants subpoenaed these witnesses for trial and noticed their depositions in late April 2008. In response, Appellee filed |4motions to quash the depositions and to exclude the witnesses from trial, which were granted by the trial court.
 

 A careful review of the record evidences that Appellants failed to ask Logan about subsequent accidents when propounding discovery and when deposing Logan. Appellants’ expert, Dr. Peter David Vizzi, examined Logan on two occasions and provided Appellants with a report subsequent to both examinations; both reports mentioned that Logan had been involved in a car accident that occurred after the accident at issue in the instant case.
 
 [4]
 
 Furthermore, the scheduling order required that defendants disclose all witnesses they intended to call for trial by March 5, 2008. Additionally, Logan testified at trial with regard to the August 28, 2005 accident; accordingly, the factfinder was made aware of the subsequent accident.
 

 Article 1551 provides that upon a party’s failure to comply with a pre-trial or scheduling order, the court “may make such orders as are just.” La. C.C.P. art. 1551(C). Likewise, this Court has recognized that a trial court is thus afforded wide discretion with respect to determining whether to modify a pre-trial order.
 
 Brooks v. Sewerage and Water Board of New Orleans,
 
 02-2246, p. 5 (La.App. 4 Cir. 4/30/03), 847 So.2d 639, 643;
 
 Wells v. Gillette,
 
 620 So.2d 301, 305 (La.App. 4 Cir.1993). Considering the foregoing, we cannot say that the trial court’s decision to disallow these witnesses from testifying was an abuse of its vast discretion under these particular facts and circumstances.
 

 | ¡Appellants’ Assignment of Error # 2
 

 Appellants assert that the trial court erroneously instructed the jury to
 
 *536
 
 apply an adverse presumption against Appellants due to an unintentional loss of photographs taken by Ms. Johnson immediately after the accident.
 

 Ms. Johnson testified at trial that she took photographs with a disposable camera immediately after the accident occurred, after which counsel for Appellee requested production of the photographs, noting that a subpoena duces tecum had previously been served on Appellants which requested any and all photographs of the scene of the October 7, 2004 accident. Counsel for Appellants averred that they had produced all photographs in their possession, but that an attempt would be made to locate the missing photographs. The trial court ordered Appellants to produce either the photographs or the camera by 9:00 a.m. the following morning. Upon learning that Appellants were unable to comply with the court’s order the following day, the court advised counsel for Appellants that an adverse presumption would be given, and advised the jury of same.
 
 [5]
 

 Notably, the lower court’s statement to the jury before deliberation was, “[wjhere a litigant fails to produce evidence available to him and he does not provide a reasonable explanation, the presumption is that the evidence would have | nbeen unfavorable to him.” Similarly, this Court has recognized that “[t]he jurisprudence is well-settled to the effect that where a litigant fails to produce evidence or witnesses available to him and no reasonable explanation is made therefore, the presumption is that the production of such evidence or witnesses would have been unfavorable to his cause.”
 
 See, e.g., Wilson v. U.S. Fire and Casualty Company,
 
 593 So.2d 695, 700 (La.App. 4 Cir.1991).
 

 Appellants in this case plainly failed to provide the court with a reasonable explanation regarding the disappearance of the photographs; thus, pursuant to Louisiana jurisprudence, Appellee was entitled to the adverse presumption. Moreover, a trial court has broad discretion in ruling on evidentiary matters, and such rulings are not disturbed on appeal absent a clear abuse of discretion.
 
 Sanford v. City of New Orleans,
 
 03-0883, p. 13 (La.App. 4 Cir. 1/21/04), 866 So.2d 882, 890. Therefore, we find that the trial court did not abuse its broad discretion in instructing the jury to apply an adverse presumption regarding Appellants’ inability to produce the photographs taken by Ms. Johnson immediately after the accident.
 
 [6]
 

 
 *537
 
 Appellant’s Assignment of Error # 3
 

 Appellee’s petition for damages asserted a claim under La. R.S. 22:1220
 
 [7]
 
 for Protective Insurance Company’s failure to pay for the property damage to his vehicle. Appellants argue that Logan is a third-party claimant rather than Protective’s insured; therefore, Protective should not have been penalized by the jury for failing to pay Logan’s property damage prior to trial, and that the trial 17court should not have rendered judgment on that portion of the verdict or imposed legal interest.
 

 Appellee submits that the accident occurred October 7, 2004. On December 7, 2004, Appellants’ expert, G.D. Whitehouse, inspected Logan’s vehicle and issued his report on December 21, 2004, recommending that Appellants pay to replace Logan’s bumper, constituting receipt of satisfactory proof of loss of the claim. After receiving this recommendation, Appellee maintains, Appellants neither replaced Logan’s bumper nor made any written offer to settle.
 

 We find that the trial court erred in its application of La. R.S. 22:1220 under these particular facts and circumstances. Both this Court and the Louisiana Supreme Court have held that a third-party claimant has no cause of action for penalties under La. R.S. 22:1220. The Louisiana Supreme Court recognized that “[t]he jurisprudence has consistently held that a third party claimant ... is not a person insured by the contract for purposes of La. R.S. 22:1220(B)(5).”
 
 Langsford v. Flattman,
 
 03-0189, pp. 3-4 (La.1/21/04), 864 So.2d 149, 151 (citing
 
 Toerner v. Henry,
 
 00-2934 (La.App. 1 Cir. 2/15/02), 812 So.2d 755,
 
 writ denied,
 
 02-1259 (La.8/30/02), 823 So.2d 951;
 
 Woodruff v. State Fam Ins. Co.,
 
 99-2818 (La.App. 4 Cir. 6/14/00), 767 So.2d 785;
 
 Venible v. First Financial Ins. Co.,
 
 97-2495 (La.App. 4 Cir. 8/26/98), 718 So.2d 586;
 
 Smith v. Midland Risk Ins. Co.,
 
 29,793 (La.App. 2 Cir. 9/24/97), 699 So.2d 1192).
 

 Similarly, in
 
 Woodruff,
 
 this Court held that a third-party claimant was not entitled to La. R.S. 22:1220 damages:
 

 The issue of whether a third party claimant states a cause of action for damages and penalties under LSA-R.S. 22:1220 B(5) has been considered by several appellate courts since the Supreme Court’s | sdecision was rendered in
 
 Theriot [v. Midland Risk Ins. Co.,
 
 95-2895 (La.5/20/97), 694 So.2d 184]. These courts have held that Subsection 1220 B(5), by its express language, applies only to claims due to an insured.
 
 See, Guidroz v. State Farm Mut. Auto. Ins. Co.,
 
 97-200 (La.App 3 Cir. 6/25/97), 698 So.2d 967,
 
 reversed, on other grounds,
 
 97-2653 (La.1/30/98), 705 So.2d 738;
 
 Smith v. Midland, Risk Ins. Co.,
 
 29,793 (La.App. 2 Cir. 9/24/97), 699 So.2d 1192;
 
 Venible v. First Financial Ins. Co.,
 
 97-2495 (La.App. 4 Cir. 8/26/98), 718 So.2d 586. We find the reasoning in these cases to be sound, and we find that the holdings are applicable to the facts in the present case. We therefore conclude that since plaintiff in this case is not a “person insured by the contract,” that section 1220 B(5) does not apply to his claim.
 

 Woodruff v. State Farm Ins. Co.,
 
 1999-2818, p. 5, 767 So.2d at 788-89;
 
 see also Venible v. First Financial Ins. Co.,
 
 1997-2495, p. 7 (La.App. 4 Cir. 8/26/98), 718 So.2d 586, 589 (holding that pursuant to the rule of strict construction of penal statutes, former La. R.S. 22:1220 “does not provide a cause of action in favor of third-
 
 *538
 
 party claimants”),
 
 writ denied,
 
 1998-2858 (La.1/8/99), 735 So.2d 638.
 
 [8]
 
 Therefore, as the law currently stands, we must find that the trial court erred in awarding penalties and interest under former La. R.S. 22:1220 to Appellee as a third-party claimant in this case.
 

 Appellant’s Assignment of Error # 4
 

 Appellants argue that the trial court improperly allowed the jury to make separate awards for loss of future earnings and loss of earning capacity, and erroneously denied the JNOV to strike either of them from the judgment. Appellants further argue that the total of $865,000.00 awarded for general damages was excessive.
 

 In this case, the general damages award was comprised of pain and suffering, past, present and future ($500,000.00), permanent residual disability |a($165,000.00), mental anguish and distress, past, present and future ($100,000.00), and loss of enjoyment of life ($100,000.00).
 

 It is well-settled that the trier of fact has vast discretion in assessing damages. La. Civ. Code arts. 1999
 
 [9]
 
 and 2324.1
 
 [10]
 
 ;
 
 Youn v. Maritime Overseas Corp.,
 
 623 So.2d 1257, 1261 (La.1993). The standard articulated by the Louisiana Supreme Court is as follows:
 

 [T]he discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
 

 Youn,
 
 623 So.2d at 1260. We do not find, based upon these particular facts and circumstances, that the trier of fact abused its discretion in determining general damages in this case.
 

 The Louisiana Supreme Court has recognized that “[i]t is clear that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct.”
 
 Lasha v. Olin Corp.,
 
 625 So.2d 1002, 1005 (La.1993). This Court has likewise held that “[t]he defendant’s liability for damages is not mitigated by the fact that the plaintiffs pre-existing physical infirmity was responsible in part for the consequences of the plaintiffs injury by the defendant.”
 
 Chavers v. Travis,
 
 2004-0992, p. 8 (La.App. 4 Cir. 4/20/05), 902 So.2d 389, 394 (quoting
 
 Lasha,
 
 625 So.2d at 1006). Similarly, | lfl“[w]hen the defendant’s tortuous conduct aggravates a pre-existing condition, the defendant must compensate the victim for the full extent of the aggravation.”
 
 Id.
 

 This standard is known as the “egg shell” plaintiff principle, wherein a defendant takes the victim as he finds him; thus, “[a]n injured person is entitled to recover full compensation for all damages that proximately result from a defendant’s tortuous act, even if some or all of the injuries might not have occurred but for the plaintiffs preexisting physical condition, disease, or susceptibility to injury.”
 
 *539
 

 Id.
 
 (quoting 2 Stein on Personal Injury Damages 3d § ll.l)(internal quotations omitted). Pursuant to this principle, a plaintiff is required to establish a causal link between the tortious conduct and the aggravation of his pre-existing condition.
 
 Chavers,
 
 2004-0992, p. 9, 902 So.2d at 394.
 

 At trial, Logan testified at length regarding his work and medical history. Logan testified that he experienced pain in his neck and back soon after the accident occurred and that he put off treatment because he thought the pain would subside. Several days after the accident, Logan testified that he was in so much pain that he contemplated suicide; that he experienced what he felt were like lightning strikes in his brain; and that he experienced pain in his neck and back so severe it brought him to tears.
 

 Logan first sought treatment from and was examined by his primary physician, Dr. Robert Franklin, on October 13, 2004, complaining of lower back pain, leg pain, neck and arm pain, and headaches. Dr. Franklin testified by deposition that he determined that Logan had a cervical and lumbar strain, headaches associated with his neck and back pain, and referred symptoms into hisjv¡left upper and lower extremities, noting Logan’s previous lumbar fusion.
 
 [11]
 
 Dr. Franklin ordered x-rays, prescribed medication, and suggested cervical and lumbar MRI scans. Logan testified that when his condition did not improve after taking the medication prescribed by Dr. Franklin, Dr. Franklin referred Logan to Dr. John E. Cobb.
 

 Dr. Franklin referred Logan to Dr. John E. Cobb, an orthopedist, on October 27, 2004. Dr. Cobb prescribed physical therapy at the Southern Spine Institute for Logan from October to December of 2004. Logan continued to complain of neck and back pain to Dr. Cobb, in addition to hip and leg pain that extended to his feet; he also reported a burning and stabbing sensation and numbness; additionally, Logan would sometimes lose feeling in his legs when first waking up in the morning. Logan further testified that he felt shooting, stabbing pains similar to a heart attack in his arms, in addition to the pain in his neck and back that would shoot up into his brain. Logan testified that as of the date of trial, he still experienced those pains. Dr. Cobb testified by deposition that his impression was that Logan suffered from posterior column mediated pain syndrome in the joints of his neck with referred pain in the left arm, muscle pain, post-traumatic cervical pain syndrome, post-traumatic lumbar pain syndrome, and sprain or strain of the lumbar spine superimposed on the prior two-level lumbar fusion. Dr. Cobb ordered MRIs and recommended neck surgery, at which time Logan sought a second opinion.
 

 Logan sought his second opinion from Dr. Mark F. McDonnell on December 17, 2004. After taking X-rays, Dr. McDonnell recommended three steroid injections per year. Accordingly, Logan received injections from Dr. Steven Stares [ l2on February 17, 2005, April 7, 2005, and September 1, 2005.
 
 [12]
 
 Logan’s condition nevertheless worsened,
 
 [13]
 
 and Dr. McDonnell ultimately
 
 *540
 
 performed triple fusion surgery on Logan on January 30, 2006.
 

 The January 30, 2006 surgery involved a disc replacement, two rods and six screws. Logan testified that he was in the hospital for four or five days as a result of receiving too much morphine after the January 2006 surgery. Logan also wore a pump in his back for two months to drain fluid and promote healing; he testified that he was essentially confined to his bed during this time. After the surgeries, Logan testified that he continued physical therapy from June 2006 through October 2006, but discontinued the therapy when his health insurance no longer covered the therapy visits. Additionally, Logan required another surgery on March 2, 2006 because he sustained a bone infection at the site of the fusion and was hospitalized until March 8, 2006 as a result.
 

 Logan testified that prior to the accident, he was able to play sports, go hunting and offshore fishing with his son, and engage in woodworking; since the October 2004 accident, he cannot engage in any of these activities. He also enjoyed the outdoors and would climb oak trees and cut them down. As a result of the accident, he can no longer tie his shoes; his fingers and hands become numb; he requires heating pads every night to sleep, and sleeps only three to four hours per night; and he can no longer ride in a boat because it is too painful for him in rough water. Additionally, Logan testified regarding how the injuries from the 2004 accident detrimentally affected his social life, as his continued pain and [ ^medical issues prevent him from socializing or participating in any of the activities he previously enjoyed.
 
 [14]
 

 Logan also testified regarding his pre-accident work with his janitorial business that began in approximately 1999.
 
 [15]
 
 His duties consisted of general physical labor involved with cleaning buildings. Logan continued this work until December 2005, at which time he closed the business due to his impending surgery. After the 2006 surgery, he could no longer perform the required duties for the janitorial business. At the time of trial, Logan worked as a supervisor for Lafayette Data Systems, L.L.C., a computer service business, a position he had held since 2002. Before the accident, Logan would install wiring and fiber optics, but could no longer perform those duties which required manual labor.
 

 A reviewing court determines whether the trier of fact has abused its vast discretion with respect to a general damages award.
 
 Riley v. Maison Orleans II, Inc.,
 
 2001-0498, p. 11 (La.App. 4 Cir. 9/25/02), 829 So.2d 479, 487. “Only if an abuse of discretion is found does the reviewing court refer to prior awards and then only for the purpose of determining the highest or lowest point, which is reasonably within that discretion.”
 
 Id.
 
 (citing
 
 Youn v. Maritime Overseas Corp.,
 
 623 So.2d 1257 (La.1993),
 
 certiorari denied,
 
 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994);
 
 Coco v. Winston Industries, Inc.,
 
 341 So.2d 332 (La.1976)). Accordingly, “the award or apportionment must be so high or so low in proportion to the
 
 *541
 
 injury or fault that it ‘shocks the conscience.’ ”
 
 Riley,
 
 2001-0498, p. 11, 829 So.2d at 487. Pursuant to the standards articulated in
 
 Youn, Lasha,
 
 and
 
 Chavers,
 
 we do not find that the trial court abused its discretion with respect to the general | udamages award in this particular case, nor do we find that the damages award was so high as to “shock the conscience” under these facts and circumstances.
 

 Additionally, we find that future loss of earnings and loss of earning capacity may form separate elements of damages.
 
 Jenkins v. Kerr-McGee Corporation,
 
 613 So.2d 1097, 1105 (La.App. 3 Cir.1993) (recognizing that “[c]learly, future lost earnings capacity can be considered a separate element of damages within the broader category of future lost earnings”);
 
 see also Corliss v. Elevating Boats, Inc.,
 
 599 So.2d 434, 437 (La.App. 4 Cir.1992) (recognizing distinction between future lost earnings and loss of earning capacity). Therefore, we do not find any error on the part of the trial court in allowing separate awards for future loss of earnings and loss of earning capacity, and we decline to disturb that portion of the judgment on the jury verdict.
 
 [16]
 

 Appellant’s Assignment of Error # 5
 

 Appellants argue that the jury erroneously awarded Appellee $70,000.00 for future medical expenses, as the record lacked evidence to support such an award.
 

 In
 
 Clarkston v. Louisiana Farm Bureau Cas. Ins. Co.,
 
 2007-0158 (La.App. 4 Cir. 7/2/08), 989 So.2d 164, this Court articulated the standard for awarding future medical expenses:
 

 Future medicals need not be established with mathematical certainty although a plaintiff must prove that it is more probable than not that expenses will be incurred ... Although a plaintiff is not required to prove the exact value of the necessary expenses, some evidence to | lssupport the award must be contained in the record ... If the fact finder can determine from past medical expenses or other evidence a minimal amount that reasonable minds could agree upon, then an award is proper. [Cites omitted.]
 

 Id.
 
 at p. 34, 989 So.2d at 187-88 (quoting
 
 Molony v. USAA Prop. & Cas. Ins. Co.,
 
 97-1836, pp. 2-3 (La.App. 4 Cir. 3/4/98), 708 So.2d 1220, 1221-22).
 

 In this case, Dr. Cobb testified that believed Logan would ultimately require a multiple level fusion and diskecto-my and decompression surgery; that the necessity of the surgery was more likely than not attributable to the October 2004 accident; and that this surgery would cost approximately $30,000.00 — $40,000.00 and would take six months to heal. Additionally, Dr. Cobb stated that Logan would require physical therapy after this surgery and would be at risk for having chronic problems at other levels. Dr. Vizzi similarly testified that Logan would be at high
 
 *542
 
 risk for further surgical intervention on his neck. The factfinder was also presented with evidence regarding Logan’s pre-exist-ing heart condition
 
 [17]
 
 and Logan’s prior back surgery and a resulting infection.
 

 Considering the foregoing, we find no merit to the claim that the award for future medical expenses was not supported by the record; thus, the factfinder’s future medical expenses award was not manifestly erroneous and shall not be disturbed.
 
 See Lee v. Hartford Ins. Co. of Midwest,
 
 2007-1309, p. 1 (La.App. 4 Cir. 5/7/08), 984 So.2d 905, 906.
 

 Appellee’s Assignment of Error # 1
 

 Appellee argues that the record does not support a finding of any fault on the part of Logan. As previously noted herein, it is well-settled that a jury’s findings | ifiof fact will not be disturbed absent a finding that the trial court was manifestly erroneous or clearly wrong.
 
 Rosell v. ESCO,
 
 549 So.2d 840, 855-45 (La.1989). Upon a careful review of the record, we cannot say that the factfinder in this case was manifestly erroneous or clearly wrong in determining that Logan was 15% at fault in the accident.
 
 See also Dupree v. City of New Orleans,
 
 1999-3651, p. 18 n. 13 (La.8/31/00); 765 So.2d 1002, 1014 n. 13 (finding that “determination and allocation of comparative fault are factual inquiries that will not be disturbed absent manifest error or unless the court was clearly wrong”).
 

 Appellee’s Assignment of Error # 2
 

 Appellee argues that the trial court abused its discretion in failing to award costs for Appellee’s mechanical engineer expert, Steve Killingsworth, against Appellants.
 

 “Unless the judgment provides otherwise, costs shall be paid by the party east, and may be taxed by a rule to show cause.” La.Code Civ. Proc. art. 1920. Article 1920 further provides that “the court may render judgment for costs, or any part thereof, against any party, as it may consider equitable.”
 
 Id.
 
 It is well-settled that “[t]he assessment of costs, including expert witness fees, lies within the trial court’s discretion and can only be reversed on appeal upon a showing of an abuse of that discretion.”
 
 Tipton v. Campbell,
 
 2008-0139, p. 26 (La.App. 4 Cir. 9/24/08), 996 So.2d 27, 45 (citing
 
 Pelleteri v. Caspian Group Inc.,
 
 02-2141, p. 19 (La.App. 4 Cir. 7/02/03), 851 So.2d 1230, 1241;
 
 Mossy Motors, Inc. v. Sewerage & Water Bd. of City of New Orleans,
 
 01-0486 (La.App. 4 Cir. 9/19/01), 797 So.2d 133);
 
 Jacobs v. Loeffelholz,
 
 94-1123 (La.App. 4 Cir. 12/15/94), 647 So.2d 1282, 1287);
 
 see also Cajun Elec. Power Coop. v. Owens-Corning Fiberglass Corp.,
 
 616 So.2d 645, 646 (La.1993);
 
 Norfleet v. Lifeguard Transp. Serv., Inc.,
 
 05-0501, p. 19 (La.App. 4 Cir. 5/17/06), 934 So.2d 846, 859.
 

 In this case, Appellee filed a Supplemental Memorandum in Support of Motion to Tax Costs, in which it included invoices from both Shael Wolfson and Steve Killingsworth. Although the court did not articulate reasons for its judgment taxing costs, the court’s judgment awarded Appellee the requested amount for Shael Wolfson, or $2,500.00, in its list of court approved costs,
 
 [18]
 
 but not for Steve Kill-ingsworth. “Generally, when a trial court judgment is silent as to a claim or demand,
 
 *543
 
 it is presumed the relief sought was denied.”
 
 M.J. Farms, Ltd. v. Exxon Mobil Corp.,
 
 2007-2371, p. 12 (La.7/1/08), 998 So.2d 16, 26. Considering the foregoing, we do not find that the trial court abused its discretion in declining to award Appel-lee costs for Steve Killingsworth’s expert fees.
 

 CONCLUSION
 

 The trial court’s judgment is hereby amended to omit the $3,782.00 in penalties and interest with respect to La. R.S. 22:1220. In all other respects, the trial court’s judgment is affirmed as amended.
 

 AFFIRMED AS AMENDED.
 

 [1]
 

 . The truck was owned by D.L. Peterson Trust.
 

 [2]
 

 . Prior to comparative-fault calculation, the jury awarded damages as follows:
 

 General Damages
 

 Pain and suffering $ 500,000.00
 

 Mental anguish $ 100,000.00
 

 Disability $ 165,000.00
 

 Loss of Enjoyment of Life $ 100,000.00
 

 Special Damages
 

 Past medical expenses $ 169,500.00
 

 Future medical expenses $ 70,000.00
 

 Property damage $ 1,900.00
 

 Past lost wages $ 19,600.00
 

 Lost future earnings $ 165,000.00
 

 Lost earning capacity $ 150,000.00
 

 Total: $1,441,500.00
 

 [3]
 

 . When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.
 

 Rosell v. ESCO,
 
 549 So.2d 840, 845 (La.1989)(internal citations omitted).
 

 [4]
 

 . Dr. Vizzi examined Logan on May 25, 2006, and again on May 17, 2007. Dr. Vizzi's report regarding the May 2006 examination references a subsequent car accident in 2005 some time before Katrina or Rita. Dr. Vizzi's report regarding the May 2007 examination also mentions that Logan was involved in a car accident that occurred after the accident in the instant case.
 

 [5]
 

 . Subsequent to Appellants’ failure to locate either the camera or the photographs, the court instructed the jury as follows:
 

 All right, ladies and gentlemen, an issue has come up that I need to address you on, and that is based upon the testimony of Mr. Logan and Ms. Johnson. Ms. Johnson testified that she had a disposable camera in her truck on the date of the accident and that photographs were taken of the accident scene. The plaintiffs sent a subpoena to Brinks to produce either the camera or the photographs. Brinies has made a search for those photographs and/or camera in Baton Rouge and in the Dallas office and has not been able to produce them. Under the law when a request is made for certain information or evidence that cannot be produced, the person who is making the request is entitled to a presumption that had the information been produced it would have been detrimental to the other party, in this case the defendant. So the plaintiff requested these photographs from the defendant. The defendant has not been able to produce them. So that under the law you may assume that that information was detrimental to the defendant.
 

 [6]
 

 . Appellants also assert that pursuant to the jurisprudence regarding spoliation, a showing of intent to deprive the complaining party of its use of the evidence at trial is required. This argument fails, however, as neither of the trial court's instructions regarding the adverse presumption were pursuant to a finding of spoliation of evidence; to the contrary, the trial court specifically noted that what had occurred was
 
 not
 
 spoliation of evidence.
 

 [7]
 

 . La. R.S. 22:1220 was renumbered as 22:1973 by 2008 La. Acts No. 415, § 1, effec-live January 1, 2009.
 

 [8]
 

 . As previously noted,
 
 Woodruff
 
 was cited by the Louisiana Supreme Court with approval in
 
 Langsford,
 
 03-0189, pp. 3-4; 864 So.2d 149, 151.
 

 [9]
 

 . “When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages.” La. Civ. Code art. 1999.
 

 [10]
 

 . “In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.” La. Civ. Code art. 2324.1.
 

 [11]
 

 . Dr. John E. Cobb performed a two-level lumbar fusion surgery on Logan in the early 1990s. Logan testified at trial that this prior surgery was not causing him any problems or pain at the time of the October 7, 2004 accident.
 

 [12]
 

 . Accordingly, Logan received two steroid injections before the August 2005 accident, and one steroid injection subsequent to the August 2005 accident.
 

 [13]
 

 . Logan also testified that in addition to not experiencing any relief from the steroid injections, he began to suffer bladder control prob
 
 *540
 
 lems, which he said Dr. McDonnell advised often happens in patients with herniated discs.
 

 [14]
 

 . Logan also testified that he wished to have additional surgery performed by Dr. Cobb, but that would require him to stop the use of Plavix for several days, which his cardiologist advised against.
 

 [15]
 

 . Logan also testified regarding his prior employment as a cook with the Olive Garden; his duties included preparing and assembling food and required standing for long periods of time.
 

 [16]
 

 . The damages awarded by the jury for loss of future earnings and loss of earning capacity are also within the factfinder's vast discretion.
 
 See Rosell v. ESCO,
 
 549 So.2d 840, 844 (La.1989). In this case, the trial court awarded $165,500.00 for loss of future earnings and $150,000.00 for loss of earning capacity. Shael Wolfson, accepted by the court as an expert in the field of forensic economics, testified at trial and estimated Logan's past lost earnings from his janitorial business ($11,-673.00); Logan's past lost earnings from Lafayette Data Systems from the date of the accident until trial ($7,914.00); Logan’s future loss of fringe benefits ($108,495.00); and Logan's future loss of income for his remaining life expectancy if Logan could work fifty percent of the time ($330,979.00; this figure represents fifty percent of Logan's current earnings of $661,958.00 projected over Logan's work life expectancy of 17.1 years).
 

 [17]
 

 . Logan testified at trial that he suffered two heart attacks. Logan's first heart attack was in 2001, and the second approximately one and one-half years after the first heart attack; each required the insertion of a stent.
 

 [18]
 

 . The trial court awarded Appellee a total of $12,211.00 in court costs.