CHARLES R. JONES, Chief Judge.
LThe Appellant, St. Bernard Parish Government, seeks review of the judgment of the district court finding that it was 90% at fault for causing the accident of the Appellees, Eleanor T. Franatovich wife of/ and Darryl Franatovich, by creating an unreasonable risk of harm in a vacant lot. Finding that the district court did not error, we affirm the judgment of the district court.
*1172 At dusk one evening in March 2002, the Franatoviches drove to the home of a relative to attend a party in Violet, Louisiana, in their pickup truck. Mr. Franatovich drove the vehicle while Mrs. Franatovich rode in the passenger seat. Upon reaching the destination, Mr. Franatovich turned off Packenham Road into a grass covered lot, where he had previously parked on several occasions. The front of the Franatoviches’ truck then abruptly fell into a four (4) or five (5) foot deep hole, which Mr. Franatovich testified that he had never previously encountered. The hole was dug by maintenance workers employed by the St. Bernard Parish Government (“St. Bernard”) in January 2002, to correct a drainage problem in the area.
As a result of the accident, Mrs. Frana-tovich sustained severe injuries. A few months before the accident, she had surgery on her lumbar spine from which she li>was recovering well prior to the accident. However, after the accident, the pain in her lower back and legs greatly worsened, and she sought treatment for the new symptoms. Extensive treatment and three (3) more spine surgeries were required as a result of her accident injuries. She sustained permanent physical damage as a result of the accident.
The Franatoviches filed suit against St. Bernard in March 2003. Trial was held in November of 2010. The district court determined that Mr. Franatovich did not see the hole because it was obscured by high grass; the area was poorly lit; and the hole was not clearly marked. The district court found that the hole dug by St. Bernard was an unreasonably dangerous defect that caused the accident of the Frana-toviches. The court further held that St. Bernard was 90% at fault for the accident and attributed 10% of fault to Mr. Frana-tovich for driving into an open hole. The district court awarded damages stemming from the accident solely to Mrs. Franato-vich. St. Bernard was ordered to pay $112,500.00 in general damages; medical expenses in the amount of $104,222.71; and $1,090.80 for vehicle repairs. From the judgment of the district court, St. Bernard timely filed the instant appeal and raises four (4) assignments of error on appeal:
1. The district court committed legal error in failing to analyze and apply La. R.S. 9:2798.1, granting St. Bernard immunity for its discretionary acts regarding the Parish drainage system;
2. The district court committed legal error by failing to apply a risk-utility analysis in determining whether the ditch which was serving a vital public function was unreasonably dangerous;
|s3. The district court clearly erred in finding Darryl Franatovich only 10% at fault, where the evidence established that he drove into an open and obvious roadside ditch in broad daylight when he voluntarily left the roadway to enter an undeveloped grassy area burdened with the Parish’s servitude of drainage; and
4. The district court erred in finding that Mrs. Franatovich’s injuries were causally related to the accident at issue, rather than her degenerative achondroplasia and spinal steno-sis.[1]
The first assignment of error raised by St. Bernard is that the district court committed a legal error in failing to *1173 analyze and apply La. R.S. 9:2798.1,[2] granting St. Bernard immunity for its discretionary acts regarding the Parish drainage system. St. Bernard argues that the district court committed an error of law in not applying La. R.S. 9:2798.1 to the case at hand. St. Bernard argues that the omission of the statute from the reasons for judgment of the district |4court evidences the court did not consider its statutory immunity. Thus, St. Bernard argues that the district court committed a legal error in not considering the immunity, and thus, we should not accord any special weight to the findings of the district court. St. Bernard argues that we are empowered to review the legal issue of immunity de novo, and render a judgment on the record. Snearl v. Mercer, 99-1738, pp. 27-28 (La.App. 1 Cir. 2/16/01), 780 So.2d 568, 584.
St. Bernard further argues that Louisiana courts such as the Fifth Circuit in Fossier v. Jefferson Parish, 07-926 (La.App. 5 Cir. 4/15/08), 985 So.2d 255, and Marino v. Parish of St. Charles, 09-197 (La.App. 5 Cir. 10/27/09), 27 So.3d 926, have frequently held that decisions regarding a parish’s drainage system are not mandated by law, but are rather based on social, economic, and political safety considerations. Thus, St. Bernard argues a parish is immune from liability for discretionary acts pertaining to its drainage system. St. Bernard explains that the January 10, 2002 ditch work was reported by St. Bernard as “skimming the ditch”, which consisted of making necessary repairs and/or maintenance to the roadside to restore proper drainage in the community. St. Bernard argues that its decision to skim the ditch involved elements of judgment and choice.
St. Bernard argues that Calvin Kelone, Jr., a St. Bernard Assistant Foreman who supervised a heavy equipment crew at the time of the accident, testified that his crew was dispatched to the ditch in question in order to address complaints of standing water, trash in yards, and to make repairs necessary to remove blockage and restore proper drainage. Mr. Kelone testified that his crew noticed a large amount of trash in the ditch, and located a blockage of mud in | .^between two mis-matched culvert pipes, which they in turn “dug out” using a backhoe to restore proper drainage. St. Bernard argues that it was required to place a new culvert or underground duct where this particular ditch *1174 was dug; therefore, it is clear that the “void” in question was an open roadside ditch necessary to accept water off of the roadway. The Parish argues that decisions made in connection with the ditch involved elements of judgment and choice; meaning that its actions were discretionary. Thus, St. Bernard maintains that the district court erred as a matter of law in not applying the statutory immunity to this matter.
The Franatoviches argue that the immunity that St. Bernard seeks to apply is not applicable to this matter because the decision of the Parish to dig a hole in order to make a drainage repair was an operational decision. They argue that the cases cited by St. Bernard are distinguishable from the matter sub judice. For instance, in the Fossier case, the Franatoviches argue that Jefferson Parish was sued because the homes of Jefferson Parish citizens were flooded by Tropical Storm Isidore. Jefferson Parish was sued for an alleged defective drainage system. In Marino, the homes of citizens of St. Charles Parish were also flooded by heavy rainfall, which accumulated due to a backed-up parish drainage system. They argue that in these cases the holdings of the Fifth Circuit, in applying the statutory immunity, were based upon the particular facts before the court and a review of the drainage systems under the social and economic considerations made by the parishes. They further argue that the district court cannot be required to apply this immunity in the instant matter because there was no evidence introduced at trial about the applicability of the | f,immunity. We agree with the rationale provided by the Frana-toviches, and And that under the facts and circumstances of the instant matter, the immunity is inapplicable.
We note that silence of the district court in a judgment on any assignment of error that has been placed before it is deemed a rejection of the claim. Carter v. Dep’t of Police, 09-0723, p. 6 (La.App. 4 Cir. 10/21/09), 24 So.3d 255, 259. Thus, we consider the silence of the district court as to the immunity of St. Bernard as a rejection of its claim. While it might have been instructive for the district court to discuss the statute, it does not appear that the district court erred in declining to apply this immunity.
The Louisiana Supreme Court in Gregor v. Argenot Great Cent. Ins. Co., 2002-1138 (La.5/20/03), 851 So.2d 959, explained that the immunity from liability established in La. R.S. 9:2798.1 is essentially the same as the immunity conferred on the federal government by the exception in the Federal Tort Claims Act (FTCA). Citing Fowler v. Roberts, 556 So.2d 1 (La.1989) (on rehearing), the Supreme Court reasoned:
... [i]n Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), the United States Supreme Court developed the following two-step analysis to examine immunity under FTCA: (1) whether a statute, regulation, or policy specifically proscribes a course of action; and (2) whether the challenged action is grounded in political, economic or social policy. This Court adopted the Berkovitz inquiry to analyze the applicability of La.Rev. Stat. 9:2798.1, describing it as follows: Discretion exists only when a policy judgment has been made. Judicial interference in executive actions involving public policy is restrained by the exception. Thus, the exception protects the government from pliability only at the policy making or ministerial level, not at the operational level. Fowler, 556 So.2d at 15.
Id, pp. 10-11, 851 So.2d at 966-67. Furthermore, “[w]hen the government acts *1175 negligently for reasons unrelated to public policy considerations, it is liable to those it injures.” Fowler, 556 So.2d at 15-16. In the matter sub judice, the district court made a factual determination that St. Bernard was not making a decision based on public policy when it responded to a drainage issue by digging a hole close to a road, and thereafter abandoned the hole without posting warning signage or attempting to alert the public to this hazard in another manner.
As the Franatoviches point out, “... [t]he decision to repair or perform maintenance on a particular road, and the extent of the repairs or maintenance, is a decision which the authority responsible for upkeep and maintenance of that road ... must make.” Odom v. City of Lake Charles, 00-01050, pp. 10-11 (La.App. 3 Cir. 1/31/01), 790 So.2d 51, 58 (citing Valet v. City of Hammond, 577 So.2d 155, 166-67 (La.App. 1 Cir.1991)). Such decisions are operational in nature and are not policy-making or discretionary function decisions for which La. R.S. 9:2798.1 provides immunity. Id.
The immunity is inapplicable in this matter because the Franatoviches suffered as a result of an operational decision of St. Bernard to dig a hole in a lot where a hole did not previously exist. The judgment of the district court finding that St. Bernard was not immune from liability for the accident at issue is not manifestly erroneous; thus, we find that this assignment of error is without merit.
|sThe second assignment of error raised by St. Bernard is that the district court committed an error of law in failing to apply the risk-utility analysis before summarily concluding that the roadside ditch constituted an unreasonably dangerous condition. St. Bernard argues that the district court failed to apply the correct legal standard in determining whether the hole created an unreasonable risk of harm. St. Bernard argues that it maintains ditches which provide a vital public service. Relying upon Oster v. Department of Transp. and Development, State of La., 91-195 (La.6/21/91), 582 So.2d 1285, St. Bernard further argues that the social utility of the ditch at issue; its required repair and/or maintenance; and the burden and cost of improving all ditches in St. Bernard outweighs the likelihood and magnitude of harm associated with a “driver willingly leaving the roadway and driving into the ditch in broad daylight.” It further argues that Mr. Franatovich saw the ditch and when he attempted to avoid it, his truck left a skid mark on Packenham Road.
The Franatoviches argue that the district court correctly held that the hole created an unreasonable risk of harm. Further, they argue that it was the duty of the Parish to properly label, mark or barricade the construction site due to the unreasonable condition St. Bernard created by digging the hole. Toledano v. Sewerage and Water Board of the City of New Orleans, 95-1130 (La.App. 4 Cir. 3/14/96), 671 So.2d 973. They further argue that the testimony elicited at trial showed that the area where the hole was dug had always been level ground with underground drainage conducted through culverts. Lastly, the Franatoviches argue that the Oster case relied upon by St. Bernard is distinguishable from the facts of the instant matter because Mr. Franatovich was [ 9operating his vehicle in a reasonably prudent manner, whereas in Oster, the plaintiff was a dirt bike rider who was travel-ling speedily through an unfamiliar grassy area and struck a drainage ditch seven-ten (7-10) feet from the highway.
First, it must be noted that the evidence and testimony adduced at trial provides support for the district court to find that St. Bernard dug a hole, not a ditch on the *1176 vacant lot. A former councilman in St. Bernard Parish, Tony R. Melerine, for instance, testified that he observed the vehicle of the Franatoviches stuck in a “hole” in an area where an underground culvert had existed. Furthermore, while there was conflicting testimony introduced at trial as to whether the instant accident occurred during the day or at night, there was a basis in the record for the district court to determine that this accident occurred at twilight or dusk.
The district court determined that St. Bernard is liable based on La. C.C. art. 2317, entitled Acts of others and of things in custody, which states:
We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.
We have held that a plaintiff raising a negligence or strict liability suit against a public entity has the burden of establishing four (4) elements to prevail:
[i]n a claim against a public entity, based on negligence or strict liability, a plaintiff has the burden of proving that: (1) the thing which caused damages was in the care, custody, and control of the defendant; (2) the thing had a vice or defect which created an unreasonable risk of harm to others; and (3) the defect | inin the thing was a cause-in-fact of the resulting injury; and (4) the public entity had notice of the defect under La. R.S. 9:2800, but failed to take corrective action within a reasonable time. Joseph v. City of New Orleans, 2002-1996 (La.App. 4 Cir. 3/5/03), 842 So.2d 420.
Engles v. City of New Orleans, 03-0692, pp. 2-3 (La.App. 4 Cir. 2/25/04), 872 So.2d 1166, 1171, writ denied, 04-1432 (La.9/24/04), 882 So.2d 1141 and writ denied, 04-2654 (La.1/7/05), 891 So.2d 697. The district court applied this standard in determining that St. Bernard was liable for the majority of Mrs. Franatovich’s damages.
The reviewing court must evaluate the fact finder’s determination of whether a defect presents an unreasonable risk of harm under the manifest error standard of review. Reed v. Wal-Mart Stores, Inc., 97-1174 (La.3/4/98), 708 So.2d 362, 365. Albeit that this is the standard of review, the Louisiana Supreme Court has consistently held that a district court must apply the risk-utility balancing test in determining whether an unreasonable risk of harm exists. In Reed, the Supreme Court reasoned:
In determining whether a defect presents an unreasonable risk of harm, the trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. Boyle, 685 So.2d at 1083 [3]; Entrevia v. Hood, 427 So.2d 1146, 1149 (La.1983); Langlois v. Allied Chemical Corp., 258 La. 1067, 249 So.2d 133 (1971). Simply put: The trier of fact must decide whether the social value and utility of the hazard outweigh, and thus justify, its potential harm to others? W. Page Keeton et al., Prosser and Keeton |non the Law of Torts § 31 (5th ed.1984). [Emphasis added].
Reed, p. 5, 708 So.2d at 365.
The risk utility analysis encompasses four factors: (1) the utility of the thing; *1177 (2) the likelihood and magnitude of harm, which includes the obviousness and appar-entness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiffs’ activities in terms of its social utility, or whether it is dangerous by nature. Pryor v. Iberia Parish Sch. Bd., 10-1683, p. 4 (La.3/15/11), 60 So.3d 594, 596-97, reh’g denied (4/29/11); Pitre v. Louisiana Tech University, 95-1466, 951487, (La.5/10/96), 673 So.2d 585, cert. denied, 519 U.S. 1007, 117 S.Ct. 509, 136 L.Ed.2d 399 (1996).
In the matter sub judice, the district court did not discuss the aforementioned four factors. Below is that portion of the Reasons for Judgment wherein the district court discussed the unreasonable risk of harm:
Next, the placement of an unmarked hole large enough to swallow a truck adjacent to a roadway is clearly an unreasonably dangerous defect. That “an accident occurred because of a vice or defect does not elevate the condition of the thing to that of an unreasonably dangerous defect.” Lasyone v. Kansas City Southern R.R., 786 So.2d 682, 694 (La.2001). In order to be unreasonably dangerous, the “vice or defect must be of such a nature as to constitute a dangerous condition that would be reasonably expected to cause injury to a prudent person using ordinary care under the circumstances.” Id. Here, the Parish dug a large hole next to a road. The hole remained open for months, and the Parish failed to maintain any visible markings or warning devices around it. Further, the Parish placed the hole between the road and vacant lot commonly used for parking vehicles-exactly where vehicles often drove. The placement of the hole combined with the lot’s poor lighting and the lack of markers around the hole at the time of the accident leads this Court to | ^conclude that the hole constituted “a dangerous condition that would be reasonably expected to cause injury to a prudent person using ordinary care under the circumstances.” Id.
The district court solely discusses the second factor of the risk-utility analysis: the likelihood and magnitude of harm, which includes the obviousness and appar-entness of the condition. The Reasons for Judgment are silent as to the utility of the hole; the cost of preventing the harm the hole caused; and the nature of the activities of the Franatoviches in terms of its social utility, or whether it is dangerous by nature. It would be a legal error for a district court to not apply the risk-utility balancing test to determine whether an unreasonable risk of harm existed. However, “[i]t is not necessary that the fact finder state the factors considered and its findings on each.” Boyle v. Bd. of Sup’rs, Louisiana State Univ., 96-1158, p. 5 (La.1/14/97), 685 So.2d 1080, 1083. It is apparent that the district court determined that the social value and utility of the hole was outweighed by its potential harm to others.
In examining the remaining three (3) factors under the facts of this case, the hole did present an unreasonable risk of harm. The hole served a matter of great utility in alleviating a drainage issue in the surrounding area. The cost of preventing the harm at issue was minimal because St. Bernard could have posted a warning sign, or temporarily covered, illuminated, or fenced the hole until the drainage issue was totally resolved. Lastly, the nature of the activity of Mr. Franatovich — in seeking a parking spot in a vacant lot off of a road — is neither dangerous nor risky conduct. Considering that the court did explain why 11sit determined that an unreasonable risk of harm existed, we affirm the *1178 holding of the district court. This assignment of error is without merit.
The third assignment of error raised by St. Bernard is that the district court clearly erred in finding Mr. Franato-vich only 10% at fault, because the evidence established that he drove into an open and obvious roadside ditch in broad daylight when he voluntarily left the roadway to enter an undeveloped grassy area burdened with the Parish’s servitude of drainage. St. Bernard cites various cases in support of its argument that the courts of this State have always supported an apportionment of fault higher than 10% against drivers whose vehicles left the roadway when their accident occurred:
• Woodbury v. Louisiana Dept. of Transp. and Development, 03-13, 03-14 (La.App. 5 Cir. 5/28/03), 848 So.2d 104 (85% fault assigned to driver who left roadway and collided with utility pole at the end of a ditch);
• Gibson v. State Through Dept. of Transp. and Development, 95-1418, 95-1419 (La.4/4/96), 674 So.2d 996 (driver was assigned 33 % fault for failing to retain control of his truck when it veered off the roadway and impacted a concrete bridge cap adjacent to the roadway);
• Simpson v. State Through Dept. of Transp. and Development, 636 So.2d 608 (La.App. 1 Cir.l993)(50% fault assigned to an inexperienced driver who was driving in the rain when he lost control of his truck — that had inoperable windshield wipers, and both rear tires were bald — and hit the railing of a trestle bridge);
|14* Williams v. City of Monroe, 27,065, 27,066 (La.App. 2 Cir. 7/3/95), 658 So.2d 820 (33% of fault assessed to the driver who lost control of her vehicle, which vaulted over a bridge railing); and
• Snearl v. Mercer, 99-1738 (La.App. 1 Cir. 2/16/01), 780 So.2d 563 (35% fault was assessed to a driver who, due to momentary inattentiveness, lost control of his dump truck, which fell 30 feet off of the highway).
The above-referenced cases are replete with instances where drivers were inattentive, they lost control of their vehicles, or their cars malfunctioned. In all of these cases, the vehicles of the drivers left the roadway, and the drivers were involved in accidents as a result thereof. St. Bernard argues that in these cases drivers have been apportioned fault at a percentage ranging from 33% to 85%.
The Franatoviehes argue that the facts and circumstances of the matter sub judice are unique and distinguishable from the cases cited by St. Bernard. They argue that Mr. Franatovich never lost control of his truck when he turned off the road into the vacant lot, and thát the evidence presented at trial shows that this accident occurred at dusk when Mr. Franatovich could not see the hole as he approached the lot. The Franatoviehes additionally argue that the skid marks present on Packenham Road were created when their truck was being removed from the hole. They contend that these marks were not the result of Mr. Franatovich seeing the hole and trying to avoid it, as alleged by St. Bernard. Thus, they maintain that considering the facts of this matter, there was a | ^reasonable factual basis for the district court to find that 90% of the fault for the instant accident lied with St. Bernard. We agree.
The allocation of fault between comparatively negligent parties is a finding of fact. Sims v. State Farm Auto. Ins. Co., 98-1613, p. 2 (La.3/2/99), 731 So.2d 197, 199. In apportioning fault, the trier of fact shall consider both the nature of the conduct of each party at fault, and the *1179 extent of the causal relation between the conduct and the damages claimed. Gibson v. State Through Dept. of Transp. and Development, 95-1418, p. 12 (La.App. 1 Cir.4/4/96), 674 So.2d 996, 1005 (citing Campbell v. Louisiana Dept. of Transp. and Development, 94-1052 (La.1/17/95), 648 So.2d 898, 902). We note that since the advent of comparative negligence, drivers straying off the roadway have been found comparatively at fault. Id., p. 10, 674 So.2d at 1004 [citations omitted]. We review a fact finder’s apportionment of fault under the manifest error-clearly wrong standard. Clement v. Frey, 95-1119, 95-1163, p. 7 (La.1/16/96), 666 So.2d 607, 610.
Under the unique facts of this case, there was a basis in the record for the district court to find that St. Bernard should be allocated 90% of the liability for the accident at issue. The district court was presented evidence as to the following facts:
1. the proximity of the hazard to the road was very close as the hole was adjacent to the roadway;
2. Mr. Franatovich’s familiarity with the lot, and the fact that in the area where the accident occurred, the ground was always solid and level until St. Bernard dug the hole at issue;
| ir,3. there was testimony that St. Bernard dug the hole in the lot to restore drainage in the area, but it did not post a sign or otherwise warn the public about the hole; and
4. that the hole was possibly obscured by the grass and there was not enough sunlight/light in the area for Mr. Franatovich to observe that there was a hole.
In light of these facts, we cannot say that the district court erred in apportioning 90% of fault to St. Bernard. This assignment of error is without merit.
The fourth assignment of error raised by St. Bernard is that the district court erred in finding that the injuries of Mrs. Franatovich were causally related to the accident at issue, rather than her degenerative achondroplasia and spinal stenosis. St. Bernard argues that the conclusions reached by the district court regarding medical causation are not reasonably supported by the expert medical evidence. It argues that its medical expert, orthopedic surgeon Dr. David Aiken, determined after reviewing the medical records of Mrs. Franatovich, that all of her post-accident surgeries were related to her pre-existing condition. Dr. Aiken, who has treated and performed surgery on patients with achondroplasia, never treated or examined Mrs. Franatovich.
The Franatoviches argue that the district court found that the hole in question was a cause-in fact of Mrs. Franatovich’s injuries because she suffered injuries that otherwise would not have occurred had she not been in the accident at issue. They further argue that the district court considered the medical evidence presented, the testimony of the treating physicians of Mrs. Franatovich, and reached a reasonable conclusion: the instant accident did cause |17her additional pain and contributed to her need for three (3) additional surgeries, albeit that she had a preexisting medical condition that also caused her pain and may have necessitated surgery in the future.
The holding of the district court on this assignment of error is based on factual findings and testimony adduced at trial. Thus, there is no basis on appeal for our Court to find that the district court committed manifest error. This is especially true because Mrs. Franatovich had near *1180 ing complete recovery from her last surgery when the instant accident occurred.
In November 2001, Mrs. Franatovich underwent a lumbar laminectomy from the T12 through L5 levels. She had almost completely recuperated from this surgery when the accident in question occurred. By March 5, 2002, she had returned to her normal activities, and was not using pain medication for her preexisting medical condition. However, the March 22, 2002 accident caused Mrs. Franatovich to experience severe pain in her lower back that radiated to her lower extremities.
Mrs. Franatovich received emergency treatment for her accident injuries at Ochsner, and thereafter treated with orthopedic surgeons Dr. Alain Cracco and Dr. James Butler. Both surgeons testified that the condition of Mrs. Franatovich was aggravated by the March 2002 accident. Mrs. Franatovich complained to Dr. Crac-co of neurological symptoms mainly involving the left lower extremity, which were not present between the time of her November 2001 surgery and the March 2002 accident.
Dr. Butler performed three (3) surgeries on Mrs. Franatovich from 2004 to 2007. After her last surgery, Mrs. Franatovich argues that her symptoms |18never completely resolved and she still experiences chronic pain. Dr. Butler further testified that her physical limitations resulting from her lumbar spine injuries and surgeries include residual loss of flexibility of the lumbar spine. He opined that her ability to perform routine functions, such as lifting, bending, and stooping, is permanently restricted.
Lastly, it is well settled in our jurisprudence that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Am. Motorist Ins. Co. v. Am. Rent-All, Inc., 579 So.2d 429, 433 (La.1991) (citing Perniciaro v. Brinch, 384 So.2d 392 (La.1980)). Where a defendant’s negligent action aggravates a preexisting injury or condition, he must compensate the victim for the full extent of his aggravation. Id. “This standard is known as the ‘egg shell’ plaintiff principle, wherein a defendant takes the victim as he finds him; thus, ‘[a]n injured person is entitled to recover full compensation for all damages that proximately result from a defendant’s tortuous act, even if some or all of the injuries might not have occurred but for the plaintiffs preexisting physical condition, disease, or susceptibility to injury.’” Logan v. Brink’s Inc., 09-0001, p. 10 (La.App. 4 Cir. 7/1/09), 16 So.3d 530, 538-39, writ denied, 09-1666 (La.10/30/09), 21 So.3d 290 (quoting 2 Stein on Personal Injury Damages 3d § ll.l)(internal quotations omitted). Pursuant to this principle, a plaintiff is required to establish a causal link between the tortious conduct and the aggravation of his pre-existing condition. Id. (citing Chavers v. Travis, 040992, p. 9 (La.App. 4 Cir. 4/20/05), 902 So.2d 389, 394). The district court found that a causal link between this accident and the aggravation of Mrs. Franatovich’s preexisting ^degenerative achondroplasia and spinal stenosis condition was established by the testimony and evidence produced at trial. This assignment of error is without merit.

DECREE

For the foregoing reasons, the judgment of the district court is affirmed.
AFFIRMED

. Degenerative achondroplasia is a genetic disorder birth defect that results in abnormally short stature. Spinal stenosis is the abnormal narrowing of the spinal canal.

. La. R.S. 9:2798.1, entitled Policymaking or discretionary acts or omissions of public entities or their officers or employees, provides:
A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:
(1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policy-making or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
D. The legislature finds and states that the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the Constitution of Louisiana.

. Boyle v. Bd. of Sup'rs, Louisiana State Univ., 96-1158, p. 5 (La. 1/14/97), 685 So.2d 1080, 1083.